IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


UNITED STATES OF AMERICA   *

   v.         *   Crim. No. RWT-11-0091

WILLIAM LAWRENCE CASSIDY  *


DEFENDANT'S MOTION TO DISMISS THE INDICTMENT ON THE GROUNDS
THAT THE PORTION OF 18 U.S.C. § 2261A(2)(A)
CHARGED THEREIN IS UNCONSTITUTIONALLY
OVERBROAD AND VAGUE AND ON THE GROUNDS THAT THE
INDICTMENT FAILS TO STATE AN OFFENSE

   Defendant William Lawrence Cassidy, through counsel, hereby moves this

Court, pursuant to Federal Rule of Criminal Procedure 12(b) to dismiss the

Indictment

   The Indictment charges that Mr. Cassidy, in violation of 18 U.S.C.

2261A(2)(A):


   with the intent to harass and cause substantial emotional distress to a
   person in another state, used an interactive computer service and a
   facility of interstate commerce, to engage in a course of conduct that
   caused substantial emotional distress to that person, to wit: the
   posting of messages on twitter.com and other Internet websites
   concerning a person whose initials are A.Z.

   As demonstrated the accompanying Memorandum of Law, the portion of the

statute charged by the Government violates the Free Speech Clause of the First

Amendment because it is overbroad and implicates a broad range of otherwise

constitutionally protected speech.  The statute is also unconstitutional as applied to

Mr. Cassidy.   Moreover, the statute at issue in this case is unconstitutionally

vague, violating Mr. Cassidy's Due Process Rights under the Fifth Amendment because it does not give notice as to what specific conduct is unlawful.

In addition, apart from the constitutionality of the charged statute, Mr. Cassidy respectfully requests this Court to dismiss the Indictment because it fails to state a criminal offense.  Accordingly, Mr. Cassidy seeks an order from this Court dismissing the Indictment on Constitutional grounds, or in the alternative, for failing to state an offense.

Mr. Cassidy respectfully requests oral argument on this motion.  A proposed Order is attached.


Respectfully submitted,

JAMES WYDA
Federal Public Defender


_____
JAMES WYDA
Federal Public Defender
EBISE BAYISA
Assistant Federal Public Defender
LAUREN E. CASE
Staff Attorney
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
301/344-0600

TABLE OF CONTENTS

I.   FACTUAL BACKGROUND............................................................ 1

  A.   KPC and Jetsunma Ahkon Llamo (a/k/a Alyce Zeoli)...................... 2

  B.   Use of Social Media by Ms. Zeoli, KPC and Mr. Cassidy.................. 4

      1.   Twitter........................................................... 4

      2.   Blogs............................................................. 5

II.  ARGUMENT..................................................................... 6

  A.   The Portion of Section 2261(A)(2)(A) Charged by the Government Is
       Unconstitutional on its Face Because It Prohibits a Wide Range of Speech
       That Would Otherwise be Protected Under the Free Speech Clause of the First
       Amendment................................................................. 6

      1.   No court has approved of any interpretation of § 2261A(2)(A) that
           criminalizes constitutionally protected speech...................... 8

      2.   Section 2261(A)(2)(A) creates a criminal prohibition of alarming
           breadth............................................................ 13

  B.   The Portion of Section 2261A(2)(A) Charged By the Government Is
       Unconstitutional As Applied to Mr. Cassidy Because It Imposes Criminal
       Sanctions on Protected Speech............................................ 16

      1.   Mr. Cassidy is being prosecuted for his speech, not his conduct..... 16

      2.   The government has prosecuted Mr. Cassidy based on speech protected
           by the First Amendment............................................. 17

  C.   The Portion of Section 2261A(2)(A) Charged by the Government Is
       Unconstitutionally Vague Because It Fails To Provide Fair Warning of
       What Conduct Is Proscribed............................................... 20

      1.   The portion of section 2261(A)(2)(A) charged does not provide the
           public with fair notice of what conduct is prohibited.............. 21

      2.   The  portion of § 2261A(2)(A) charged by the Government fails to
           establish standards that are sufficient to guard against arbitrary
           enforcement........................................................ 24

  D.   Well-Settled Canons of Statutory Construction Favor Mr. Cassidy's
       Interpretation of the Statute............................................ 25

  E.   The Indictment Fails to State an Offense................................. 27

CONCLUSION...................................................................... 27

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
THE INDICTMENT ON THE GROUNDS THAT THE PORTION OF
18 U.S.C. § 2261A(2)(A) CHARGED THEREIN IS UNCONSTITUTIONALLY
OVERBROAD AND VAGUE
AND ON THE GROUNDS THAT THE INDICTMENT FAILS
TO STATE AN OFFENSE

The Indictment in this case charges Mr. Cassidy with interstate stalking in violation of 18 U.S.C. § 2261A(2)(A).  Specifically, the Government alleges that Mr. Cassidy's posts on the social media site Twitter and on other Internet websites (unnamed in the Indictment) constitute the federal offense of "Interstate Stalking" because he used a computer with the intent to harass and cause substantial emotional distress to a person in another state.[1]  As demonstrated below, the portion of the statute charged by the Government violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fifth Amendment: it is unenforceable on its face and as applied to this case.  In addition, apart from the constitutionality of the charged statute, Mr. Cassidy respectfully requests this Court to dismiss the Indictment because it fails to state a criminal offense.

---

[1] The Indictment does not specify which postings (on Twitter or otherwise) it believes violate the charged statute nor does it provide any factual information underlying the case.  Mr. Cassidy has filed a Motion for a Bill of Particulars and is awaiting the Government's response.  Because of the lack of information in the Indictment, Mr. Cassidy will rely on the information contained in the Criminal Complaint.  It must be noted, however, that there is a considerable gulf between the allegations in the Complaint and the allegations returned by the grand jury in the Indictment.

## I.  FACTUAL BACKGROUND

### A.      KPC and Jetsunma Ahkon Llamo (a/k/a Alyce Zeoli)

This case arises out of Mr. Cassidy's association with an organization known as Kunzang Palyul Choling (KPC), also referred to as Kunzang Odsal Palyou Changchub Choling or "Fully Awakened Dharma Continent of Excellent Clear Light."  See Affidavit in Support of Criminal Complaint, attached hereto as Exhibit A, citing www.tara.org.  KPC, whose members believe in a sect of Buddhism, is located in Poolesville, Maryland and is led by a woman known to members of KPC as Jetsunma Ahkön Lhamo. Born in Brooklyn, New York in 1949 as Alyce Louise Zeoli, she also has gone by the names Catherine Burroughs and Alyce Cassara. Martha Sherrill, The Buddha from Brooklyn: A Tale of Spiritual Seduction  xvii (2000).

According to the Complaint, Ms. Zeoli is "an enthroned tulku, or reincarnate master, within the Palyul lineage of the Nyingma tradition of Tibetan Buddhism." Exh. A at 2.  She is believed by members of KPC to be the sole American-born female "tulku."Id.  A YouTube video of her enthronement ceremony is posted on KPC's website, www.tara.org.

http://www.tara.org/jetsunma-ahkon-lhamo/biography/.[2]   Sometime in September

---

[2]  In addition to her role as a "tulku," Ms. Zeoli has courted the public's attention through the promotion of her musical and entrepreneurial pursuits:  As recounted on the KPC website, her musical offerings are available on CD and through music-sharing websites. http://www.tara.org/jetsunma-ahkon-lhamo/music/.  Ms. Zeoli has also formed a production company, Blinded by View.  Id.

Her entrepreneurial pursuits include the development of a hair care product

2007, according to the Complaint, one of the monks of KPC became acquainted with Mr. Cassidy, a practicing Buddhist.[3]  Exh. A at 2-3. (According to the Complaint, Mr. Cassidy was using the name William Sanderson.  The Complaint does not allege where or how he became acquainted with the monk (i.e. via computer or in person).  Ms. Zeoli invited Mr. Cassidy to a retreat she had in Sedona, Arizona and Mr. Cassidy accepted the invitation.  Id.

In the Complaint, Special Agent Nye recounts unusual events, related to her by Ms. Zeoli and/or members of KPC – i.e. that Mr. Cassidy claimed he was an American "tulku.", that he proposed marriage after knowing her for a short time, that he told her his real name was William Cassidy and that he told her that he had lung cancer. Id.  Notwithstanding these seemingly unusual occurrences, Ms. Zeoli "promoted" Mr. Cassidy to Chief Operating Officer of KPC in Sedona. Id.[4]

Mr. Cassidy and Ms. Zeoli had a falling out and Mr. Cassidy left Sedona on February 23, 2008, according to the Complaint, along with a Buddhist nun named Julie Green who also went by the names Nydia Alexandra and Jewel Lilly Annabella.  Id.

---

line called Ladyworks.  Sherrill, 182.  The product line, which included a hair-conditioning gel cap that cost one hundred dollars, was sold by The Sharper Image. Id.  Ms. Zeoli was featured in an infomercial selling this product.  Id.

[3] Special Agent Nye's affidavit is based on conversations with Ms. Zeoli as well as members of KPC at unspecified times.  Exh. A at 2.  As noted above, Mr. Cassidy met Ms. Zeoli at her Sedona retreat around September of 2007 and left a few months later in February of 2008.

[4] Mr. Cassidy disputes many of the allegations in the Complaint.  However, for purposes of this motion, they will be accepted at face value.  As discussed below, these allegations, even if true, do not constitute the criminal offense of interstate stalking.

Neither the Indictment nor the Complaint allege that Mr. Cassidy has seen Ms. Zeoli since he left her Sedona retreat in February 2008, nor does that Complaint allege that Mr. Cassidy has sent her any form of communication to her personally (i.e. a telephone call, an email, or a text.)

B.    Use of Social Media by Ms. Zeoli, KPC and Mr. Cassidy

Ms. Zeoli, KPC members and Mr. Cassidy, as well as others who have disassociated with KPC, are active users of social media, including Twitter, Facebook, and various blogs.

1.    Twitter

Twitter is a social networking service.  Users create Twitter accounts and easily communicate with many people at a time.  To communicate on Twitter, users send short messages called "tweets" that are disseminated to their group of followers.  Instead of sending separate emails to all of their friends, users can send one tweet that is sent to all of their followers.  Users can also "re-tweet" or forward a message that someone else has posted either with or without modifications.  Thus, unlike email, texts or telephone calls, Twitter is not intended to be used for individuals to send messages directly to one other person.

Twitter is often used to follow celebrities, politicians and businesses.  Once a user finds a Twitter feed that he or she wants to follow, the user simply clicks on the word "follow" displayed on the Twitter website.  Following someone on Twitter means that every tweet sent from the account is sent to the followers.  It is easy to un-follow a Twitter find by simply clicking on "unfollow."  In addition, if a user is receiving unwanted communications from someone, Twitter allows (and

4

encourages) a user to block that person.  Blocking prevents one user from following or replying to another.

Twitter does not mediate content or intervene in dispute between or among users.  http://support.twitter.com/articles/15794.  Users are allowed to post content that some may view as inflammatory or offensive, as long it does not violate Twitter's terms of service and rules.  Id.  Pursuant to these rules, Twitter does not censor illegal content, such as pornography or "direct, specific threats of violence against others."  . .  http://support.twitter.com/groups31-twitter-basics/topics/114-guidelines-best-practices/articles/18311-the-twitter-rules.

> 2. Blogs

The Indictment does not specify any website other than Twitter, but the Complaint does refer to blogs related to the topic of Buddhism.  As the court is well aware, a blog is a type of Internet journal maintained by an individual or organization.  Other computer users often post comments on other blogs. There are numerous blogs on many subjects, including Buddhism; KPC is alleged to administer one entitled Tibetan Buddhist Altar and Mr. Cassidy is alleged to administer one entitled Digital Tibetan Buddhist Altar. It is subtitled "Buddhist Polemics, Rabbit Appreciation, Desert Life & The Daily Lama."

On February 2nd, 2011, an arrest warrant was issued for  Mr. Cassidy based on the allegation that his computer postings constituted the federal offense of Interstate Stalking.  He was arrested in California and brought to the District of Maryland.  The Government subsequently obtained an Indictment, charging that Mr. Cassidy's cyberspeech on Twitter and other websites violated 18 U.S.C. §

2261(A)(2)(A).

## II.   ARGUMENT

As demonstrated below, the part of § 2261(A)(2)(A) that the Government has

charged violates both the Free Speech Clause of the First Amendment and the Due

Process Clause of the Fifth Amendment.  Even if that portion of the statute could

pass constitutional muster in some cases, it is unconstitutional as applied in this

case.  Finally, irrespective of the constitutionality of the statute, the Indictment

filed in this case must be dismissed because it fails to state an offense.

> A.    The Portion of Section 2261(A)(2)(A) Charged by the Government Is
> Unconstitutional on its Face Because It Prohibits a Wide Range of
> Speech That Would Otherwise be Protected Under the Free Speech
> Clause of the First Amendment.

The First Amendment states that "Congress shall make no law . . . abridging

the freedom of speech or of the press."  U.S. Const. Amend. I.  At its core, the First

Amendment prohibits the Government from "restrict[ing] expression because of its

message, its ideas, its subject matter, or its content" Ashcroft v. American Civil

Liberties Union, 535 U.S. 564, 573 (2002).  The First Amendment, "'presupposes

that right conclusions are more likely to be gathered out of a multitude of tongues,

than through any kind of authoritative selection.  To many this is, and always will

be, folly, but we have staked upon it our all.'" New York Times v. Sullivan, 376 U.S.

254, 270 (1964)(citation omitted).  Of course, First Amendment protection is not

absolute and the Supreme Court has defined three narrow categories of speech, "the

prevention of which has never thought to raise any Constitutional problem."

Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72 (1942). These exceptions are

obscenities, Roth v. United States, 354 U.S.476, 483 (1957), incitement,

Brandenburg v. Ohio, 395 U.S.444, 447-449 (1969),  and fighting words,

Chaplinsky, 351 U.S. at 572.[5]

The Supreme Court has recently rejected governmental attempts to broaden

these "well-defined and narrowly limited classes of speech."  Brown v.

Entertainment Merchants Ass'n,, __ U.S. __, 131 S.Ct. 2729 (Jun. 27,

2011)(invalidating state statute that restricted the sale or rental of violent video

games to minors and imposed civil fine for a violation); United States v. Stevens, __

U.S. __, 130 S.Ct. 1577 (2010)(invalidating federal statute that sought to

criminalize the creation, sale or possession of certain depictions of animal cruelty).

Indeed, the Court admonished in Entertainment Merchants Ass'n  that "whatever

the challenges of applying the Constitution to ever-advancing technology, 'the basic

principles of freedom of speech and the press, like the First Amendment's command,

do not vary' when a new and different medium for communication appears." 131

S.Ct. at 2733 (quoting Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 503 (1952).[6]

---

[5]  Transmitting threatening communications is prohibited under 18 U.S.C. §
875.  To conform with the First Amendment, this statute has been interpreted
narrowly to require a "true threat."  Watts v. United States, 394 U.S. 705, 708
(1969).  In addition, for speech to constitute incitement, to conform with the First
Amendment, the Supreme Court has imposed an imminence requirement.  Hess v.
Indiana, 414 U.S. 105, 108 (1973)(holding that imminence requirement under
Brandenburg v. Ohio, 395 U.S. 444, 447 (1969) is not satisfied by constitutionally
protected speech that "amount[s] to nothing more than advocacy of illegal action at
some indefinite future time").

[6]  The narrowness of these exceptions is illustrated by the Ninth Circuit's
recent decision in United States v. Bagdasarian, __ F.3d. __, 2011 F.3d 2803583
(9th Cir. July 19, 2011).  There, the defendant "an especially unpleasant fellow" in
possession of numerous weapons, posted the following on a public website under the

1.     No court has approved of any interpretation of § 2261A(2)(A) that criminalizes constitutionally protected speech.

In this case, the court should reject the Government's novel attempt to broaden the traditional categories of speech unprotected by the First Amendment. The statute at issue, 18 U.S.C. § 2261A(2)(A) spells out numerous ways in which an individual can violate the statute. Specifically, it provides:

> Whoever . . . with the intent–
>
> to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another state or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States . . .
>
> uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional  distress to that person or places that person in reasonable fear of the death of, or serious bodily injury to [that person, a member of the immediate family . . .of that person, or spouse or intimate partner of that person . . .shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A(2)(A).

At the outset, it is important to note that Mr. Cassidy has been specifically charged under the portions of § 2261A(2)(A) that deal with intent to "harass" and "cause substantial emotional distress" to a person in another state via use of a computer.  See Indictment, attached hereto as Exhibit B. The harm alleged by this computer usage is that it "cause[d] substantial emotional distress" to the person in

---

title "Shoot the nig" during the last presidential election: "Country fkd for another 4 years+, what nig has done ANYTHING right???  Long term??? Never in history, except sambos.  Fk the nigger, he will have a 50 cal in the head soon."  In a decision by Judge Reinhardt in which Judge Kozinski joined, the court reversed the defendant's conviction for threatening to kill or do bodily harm to a presidential candidate, finding that the defendant's speech did not rise to the level of a "true threat" and was protected by the First Amendment.

another state.  Mr. Cassidy maintains that the portions of § 2261A(2)(A) that

criminalize speech intended to "cause substantial emotional distress" and to

"harass," a person in another state, as well as the alleged resultant "substantial

emotional distress" are unconstitutionally overbroad and thus do not comport with

the protections of the First Amendment.  While Mr. Cassidy does not concede that

the other language in the statute may pass constitutional muster, he is not

challenging the other methods of violating the statue.[7]

Counsel is not aware of any other case in which the Government has

obtained an Indictment for Interstate Stalking predicated on the provisions of §

2261(A)(2)(A) charged in this case.[8]  The few reported cases involving this statute

(both before and after the 2006 amendments) involved indictments charging threats

to kill, injure, or intimidate; involved direct contact; involved actual travel; and/or

---

[7] These portions of the statute were tacked on in 2006 as a part of amendments to the Violence Against Women Act.  House Report No. 109-233.  The legislative history accompanying the statute deals primarily with other provisions. Id.  One sentence of the voluminous House Report is devoted to the amendments at issue herein.  Id. It states that the legislation "amends title 18 to prevent stalking over the Internet by allowing Federal prosecutors more discretion in charging stalking cases that occur entirely over the Internet."  However, there is no indication in the legislative history (nor could there be consistent with the Supreme Court's constitutional jurisprudence) that the amendment was intended to apply to speech that consists of public postings on websites as opposed to direct contact.

[8] Since § 2261(A)(2)(A) regulates a particular type of speech, i.e. Internet speech, it may be upheld only if its survives the strict scrutiny test.  *PSI Net*, 362 F.3d at 233.  Under this standard, the statute in question must be: 1.) narrowly tailored to 2.) promote a compelling government interest.  *Id.* (citing *United States v. Playboy Entertainment Group*, 529 U.S. 803 (2000)).  No court has approved of the statutory language in this case under any standard, much less under the more rigorous strict scrutiny standard.

9

charged the portion of the statute involving fear of death or serious bodily to injury to the victim or a member of the victim's family. United States v. Shrader, 2010 WL 2179572 (S.D. W.Va. 2010) (unpublished); United States v. Curley. 639 F.3d 50 (2d Cir. 2011) (vacating interstate stalking conviction based on evidentiary errors); United States v. Casite, 2011 WL 1755701 (E.D. Pa. 2011) (unpublished) (involving threats to intimidate and interstate travel); United States v. Infante,__ F. Supp. 2d __, 2010 WL 1268140 (involving interstate travel, but dismissed for lack of probable cause of harassment); United States v. Jordan, 591 F. Supp. 2d 686, 707 (S.D.N.Y. 2008)(observing that government limited interstate stalking prosecution to defendant's direct attempts to contact victim by telephone with threats to kidnap or injure defendant's former girlfriend or members of her family); See also United States v. Wills, 346 F.3d 476 (4th Cir. 2003) (upholding kidnapping and stalking convictions where defendant lured victim to drive across interstate lines to prevent him from testifying as a witness in another case involving the defendant); United States v. Grob, 625 F.3d 1209 (9th Cir. 2010)(involving twenty-two emails and fifty text messages sent to ex-girlfriend with threats to kill, some of which were accompanied by pictures of dead and dismembered women); United States v. Bell, 303 F.3d 1187 (9th Cir. 2002)(involving interstate travel to the house of federal agent, theft of mail, and direct communication of threats to agent).

The Sixth Circuit's decision in United States v. Bowker, 372 F.3d 365 (6th Cir. 2004), judgment vacated on other grounds, 543 U.S. 1182 (2005) not only pre-dates the 2006 amendments (and significant Supreme Court First Amendment

jurisprudence) but, like the other cases, involved portions of the statute not charged

here.  Id. at 388-89 (holding that prosecution established cyberstalking where

defendant, who had followed television news reporter from Ohio to West Virginia,

sent her letters and made telephone calls to her directly, causing the reporter to

fear that he would rape her).  The facts of Shrader, noted above, are, like Bowker,

harrowing.  2010 WL 2179572 at *1 n. 1.  There, the defendant had murdered a

former girlfriend's mother and friend in 1975.  Id. Many years later, he learned of

the former girlfriend's whereabouts and sent her "an ominous 32 page letter" and

also made frequent telephone calls to her.  Id.  Apart from the fact that the

Government in this case does not allege any direct communication, this case does

not involve the statutory portions (or remotely analogous factual scenarios)  invoked

in the above cases.

    The portions of the statute that are invoked by the Government in this case

have not been held to pass constitutional muster by any court.  This is not

surprising.: The portion of § 2261(A)(2)(A) at issue here is unconstitutional under

the overbreadth doctrine of the First Amendment.

    As the Fourth Circuit has observed, "[t]he Constitution provides significant

protection 'from overbroad laws that chill speech within the First Amendment's vast

and privileged sphere.'" PSI Net v. Chapman, 362 F.3d 227, 234 (4th Cir.

2004)(affirming district court's enjoinment of statute that criminalized

dissemination of material harmful to minors over the Internet on the grounds that

statute invalidating statute violated First Amendment) (quoting Ashcroft v. Free

Speech Coalition, 535 U.S. 234, 244 (2002)). "The Government may not suppress lawful speech as the means to suppress unlawful speech.  Protected speech does not become unprotected merely because it resembles the latter."  PSI Net, 362 at 241 (Davis, J., concurring).

The showing that the law punished a substantial amount of protected speech, "judged in relation to the statue's plainly legitimate sweep" is sufficient to invalidate all enforcement of the law, "until and unless a limiting construction or partial invalidation so narrows if as to remove the seeming threat or deterrence to constitutionality protected expression.  See Virginia v. Hicks, 539 U.S. 113, 118-119 (2003) (citing Broadrick v. Oklahoma, 413, U.S. 601, 615 (1970); see also PSI Net at 234 (stating that "under the doctrine of overbreadth, a statute violates the First Amendment if it prohibits a substantial amount of protected expression")(citation omitted). This remedy arises out of  concern that "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech - especially when the overbroad statute imposes criminal sanctions.  Hicks, 539 U.S. at 119 (citing Shaumburg v. Citizens for a Better Environment, 444 U.S. 620, 634 (1980) (emphasis added).

2.     Section  2261(A)(2)(A) creates a criminal prohibition of
       alarming breadth.

Section 2261(A)(2)(A) represents a criminal statute of unprecedented and

"alarming breadth."  Stevens, 130 S.Ct. at 1588.  The statute's plain sweep

encompasses a substantial amount of protected speech.  Under the portion of §

2261A(2)(A) charged herein, any individual who, "with the intent to harass" or

"cause substantial emotional distress" uses an "interactive computer service" in a

way that causes "substantial emotional distress" to a person in another state is

guilty of the crime of interstate stalking and subject to a maximum penalty of five

years of imprisonment.  The statute does not define what constitutes "substantial

emotional distress" nor does the statute define "harassment."[9]

Certainly, not all speech intended to cause a listener substantial emotional

distress falls outside the protection of the First Amendment.  One need only look to

political advertising as examples of speech specifically meant to cause the intended

target substantial emotional harm; despite the intended harm, speech is certainly

protected by our Constitution.

This statute would cover, for example, an individual who believes that his or

her elected representative's vote on a piece of legislation is wrong and writes

repeated, harshly-worded, blog postings about how tyrannical and foolish this

---

[9]  This failure to define key terms presents not only a First Amendment
problem, but, as discussed below, presents another doctrinally distinct
constitutional problem under the Fifth Amendment.

politician is for voting this way.  This individual wants to upbraid the

representative and let him or her know that his vote will not be forgotten come

election day.  Under the plain reading of § 2261A(2)(A), this blogger would be

subjected to criminal penalties because he used an "interactive computer device,"

(the blog) to "engage in a course of conduct" (the repeated blog postings) with the

"intent to harass . . . or cause substantial emotional distress" (to shame and

threaten the politician with the loss of a vote).

There is no question that speech in this example constitutes protected speech;

however, this individual could face imprisonment under this overbroad statute.  As

the Supreme Court held, "even when a speaker or writer is motivated by hatred or

ill will, his expression [is] protected by the First Amendment.  Garrison v.

Louisiana, 379 U.S. 64 (1964)(invalidating state criminal libel statute); See also

Snyder v. Phelps, __ U.S. __, 131 S.Ct. 1207, 1220 (holding that fundamentalist

church members who picketed funeral of fallen military soldiers, with signs

including such hateful speech as "Thank God for Dead Soldiers" and "Fags Doom

Nation" was shielded from civil liability under the First Amendment even though

such speech "inflict[ed great pain").

Other examples of which in which the charged statute can be violated (and

are violated on a daily basis abound.)  For instance, posting more than one comment

on an Internet retailer's website, such as Amazon.com could also put an individual

in this position.  Indeed, individuals have strong feelings about books, movies and

other products.  No doubt, an excessively critical comment causes substantial

emotional distress in the creator of the critiqued product.  Notably, when journalist Martha Sherrill published her book about Ms. Zeoli in which she raised questions about the legitimacy of Ms. Zeoli's religious leadership, given her lavish lifestyle and her treatment of those who chose to leave KPC, Ms. Sherrill reports that she received a surprising amount of hate mail from KPC members, including "a couple of unfortunate threats too."  Martha Sherrill, The American Yen for Zen, Slate, May 17, 2001.  There can be no credible contention that this speech falls outside the purview of the statute charged in this case.

Moreover, any student who has posted on the popular academic rating website, ratemyprofessor.com, should think twice about the next post, lest the comment be so critical that it causes the professor too much emotional distress.  The popular social media site Facebook seems nothing but of morass of posts intended to harass and/or cause substantial emotional distress, with the postings ranging from unflattering or embarrassing portrayals of people to attempts to boycott an organization or company with the hopes it will change some policy of which the computer user disapproves.[10]

These are but few examples of the ways that § 2261A(2)(A) punishes conduct that is protected by the First Amendment.  Considering the millions of people who

---

[10]  The role that social media played (and is playing) in the criticism of oppressive regimes around the world should not be underestimated.  Indeed, those critical of tyrannical public figures are using social media precisely because they hope it will cause these individuals or governments enough distress to change their anti-democratic practices.  As a result, this type of speech falls within the ambit of the statute.

use micro-blogging sites such as Twitter and the hundreds of millions of postings or "tweets" that are posted on Twitter every day, the reach of section § 2261A(2)(A) is limitless. This Court should strike down the portions of this statute prohibiting speech that is "harass[ing]" and/or "cause[s] substantial distress."

B.   The Portion of Section 2261A(2)(A) Charged By the Government Is Unconstitutional As Applied to Mr. Cassidy Because It Imposes Criminal Sanctions on Protected Speech.

1.   Mr. Cassidy is being prosecuted for his speech, not his conduct.

Even if this Court declines to rule that the portion of § 2261A(2)(A) charged in this case is unconstitutional on its face, this court should find that the statute is unconstitutional as applied to the Mr. Cassidy. While it is true that the First Amendment protection applies in lesser force when conduct, rather than speech, is at issue, the only "conduct" alleged in the Indictment is Mr. Cassidy's speech, i.e., "the posting of messages on www.twitter.com and other Internet websites concerning a person whose initials are A.Z."

In fact, there is no contention that Mr. Cassidy ever traveled to Maryland or attempted to travel to Maryland in order to engage in any criminal behavior.  Nor is there any contention that Mr. Cassidy ever emailed, called, faxed, texted or wrote the victim or otherwise tried to communicate directly with her.  Instead, the government alleges only that his tweets and postings on his own blog "concerning" a particular individual are criminal speech, subjecting him to imprisonment.  Thus, Mr. Cassidy is being prosecuted solely for his speech.

16

2.     The government has prosecuted Mr. Cassidy based on speech
       protected by the First Amendment.

As stated in above, the Supreme Court recently reaffirmed that there are only a few limited exceptions to First Amendment protection; statements intended to incite violence, imminent threats, obscene material, and defamatory statements. The speech in this case does not fall into any of three exceptions.  First, there is no argument that Mr. Cassidy's speech is obscene.  Second, Mr. Cassidy's words are not inciting anyone to imminent violent action.[11]  In addition, the government has not alleged that Mr. Cassidy's speech constitutes true threats.  Finally, there is no federal criminal (or civil) defamation statute.

This case rests on Mr. Cassidy's sometimes sophomoric, irreverent and obnoxious posts on his own Twitter feed and blog.  These words were undoubtedly meant to cause a reaction by those who read these words, just as the competing posts by KPC members were intended to elicit a reaction and just as countless numbers of people who post messages on the Internet so intend; however, barring the three exceptions above, the Supreme Court has never allowed for criminal

_____

[11]  In Rice v. Paladin Enterprises, 128 F.3d 233 (4th Cir. 1997), the Fourth Circuit addressed the availability of civil liability for the publisher of a book entitled "Hit Man," a book that gave instructions for soliciting, preparing for, and committing murders.  In concluding that the publisher was not immune from civil liability, the court contrasted the book's "detailed, concrete instructions and adjurations to murder" to the "vague,rhetorical threats of politically or socially motivated violence that have historically been considered part and parcel of the impassioned criticism of laws, policies, and government indispensable in a free society and rightly protected under Brandenburg. 128 F.3d at 262; see also id., (collecting Supreme Court cases of offensive and repugnant speech that still is constitutionally protected).

liability simply because the protected speech in question offended the listener.

Indeed, the Supreme Court has long held that the First Amendment protects

unpleasant, offensive and caustic speech,  Hustler Magazine v. Falwell, 485 U.S. 46,

51 (1988).

It has further limited a public figure from recovering damages for the tort of

intentional infliction of emotional distress.  Id. at 57.  The fact that the caustic

comments concern a religious figure does not  immunize them from the protections

of the First Amendment.  Id.  Indeed, "[t[he very purpose of the First Amendment is

to foreclose public authority from assuming a guardianship of the public mind

through regulating the press, speech, and religion."  Thomas v. Collins, 323 U.S.

516, 545 (Jackson, J., concurring).  Moreover, the blog attributed to Mr. Cassidy,

DigitalTibetanBuddhistAltar is described as relating to, among other topics,

"Buddhist Polemics."  While the Indictment omits the speech it believes constitutes

Interstate Stalking, to the extent it includes "rhetorical hyperbole," it is predicated

on speech that has long been constitutionally protected.  Milkovich v. Lorain

Journal, 497 U.S. 1, 17 (1990).

This prosecution is even more troubling because it is premised on statements

that Mr. Cassidy made on the internet to the general public, rather than direct

communications between Mr. Cassidy and the alleged victim.  See State v. Ellison,

900 N.E. 2d 228, 230-31 (Ohio App. 2008)(reversing defendant's conviction for

harassment because message – involving allegations of child molestation – was

posted on a social networking website, rather than directly communicated to the

18

victim).  The concurring opinion in Ellison succinctly summed up the problem with prosecutions based on speech, but not conduct: "It is a scary thought that someone could go to jail for posting a comment on the Internet.  If so, we could not build jails fast enough."  Id. (Painter, J., concurring).

There is no contention that Mr. Cassidy ever sent any direct communications to the victim through any medium.  His statements are not directed to a specific person, but rather have been disseminated to the world wide web. See Bowker, 372 F.3d at 379 (contrasting direct communication from public speech because of an individual's "option of ignoring" the latter form); Cf. Watts, 394 U.S. at 707-08 (relying in part on the fact that threatening speech at issue was made in public in concluding it was worthy of First Amendment protection).  With regard to Twitter, the option of ignoring could not be easier – all a computer user has to do is click "unfollow."

There is also no contention that Mr. Cassidy was not authorized to use a computer or that his speech violated Twitter's  rules or terms of service.  Of course, such a violation could not be the basis for a federal criminal prosecution.  See United States v. Drew, 259 F.R.D. 449 (C.D. Ca. 2009)(holding that defendant who intentionally violated the terms of service of MySpace, resulting in the suicide of thirteen-year old girl who had been a classmate of the defendant's daughter, could not be held criminally liable and reversing jury's guilty verdict.)  While the facts of Drew are undeniably tragic, it supports Mr. Cassidy's claim that federal statutes should not be expansively interpreted simply because we live in the age of the

Internet.[12]  Rather, the use of this relatively new and evolving technology should be

interpreted to conform to the Supreme Court's constitutional jurisprudence.

C.     The Portion of Section 2261A(2)(A) Charged by the Government Is
       Unconstitutionally Vague Because It Fails To Provide Fair Warning
       of What Conduct Is Proscribed.

       The Due Process Clause of the Fifth Amendment requires that any statute

that imposes criminal liability must give potential defendants fair warning of what

conduct is proscribed.  City of Chicago v. Morales, 527 U.S. 41, 52 (1999).  Criminal

liability cannot be imposed without "fair warning . . . in language that the common

world will understand of what the law intends to do if a certain line is passed.  To

make the warning fair, so far as possible the line should be clear."  United States v.

Lanier, 520 U.S. 259, 265 (1997)(quoting McBoyle v. United States, 283 U.S. 25, 27

(1931)).

       As the Supreme Court has explained, the Due Process Clause requires that a

criminal statute define an offense: "'(1) with sufficient definiteness that ordinary

people can understand what conduct is prohibited[;] and (2) in a manner that does

not encourage arbitrary and discriminatory enforcement.'"  Skilling v. United States,

__ U.S. __, 130 S.Ct. 2896, 2927-28 (2010)(quoting Kolender v. Lawson, 461 U.S.

352, 357 (1983)).  A law that fails to do either is impermissibly vague.  Morales, 527

U.S. at 56 (citation omitted).   "The general test of vagueness applies with

---

[12]  Drew involved the much more vexing problem of minors and the Internet.
That concern is not present in this case as Ms. Zeoli and Mr. Cassidy are both
adults.

particular force in review of laws dealing with speech."  Hynes v. Mayor and

Council of Borough of Oradell, 426 U.S. 610, 620 (1976)(observing that "[s]tricter

standards of permissible statutory vagueness may be applied to a statute having a

potentially inhibiting effect on speech")(citations omitted).

Courts in the Fourth Circuit and elsewhere have long recognized the

importance of precise definitions in criminal statutes.  See e.g., Jim Crockett

Promotion, Inc. v. City of Charlotte, 706 F.2d 486 (4th Cir. 1983)(invalidating "with

no difficulty" portion of anti-noise ordinance involving undefined term and

upholding portion of ordinance supported by definition that was "precise" and "[told]

one and all the specific [conduct that was prohibited"); Church of the American

Knights of the Ku Klux Klan v. City of Erie, 99 F.Supp.2d 583, 591-92 (W.D. Penn.

2000)(invalidating portion of anti-mask statute that did not define "intimidate,"

"threaten," "abuse," or "harass").

As demonstrated below, the portion of § 2261A(2)(A) neither provides notice

of what conduct is prohibited nor discourages arbitrary enforcement, much less

survives the more rigorous test for statutes involving the criminalization of speech.

    1.    The portion of section 2261(A)(2)(A) charged does not provide
           the public with fair notice of what conduct is prohibited.

As noted above, the Government alleges that Mr. Cassidy committed the

federal criminal offense of Interstate Stalking by posting messages on public

websites with an "intent to harass" and "cause substantial emotional distress" to a

person in another state.  These messages, the Indictment alleges, were part of a

"course of conduct that caused substantial emotional distress" to the person in another state.

Key terms such as "intent to harass," and "substantial emotional distress" are not defined.  The one key term that is defined is "course of conduct."  This phrase "means a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose." 18 U.S.C. § 2266(2).  Unfortunately, this definition only raises more questions than it answers, because it, like parts of § 2261A(2)(A), is plagued by a lack of clarity: Do two postings on Amazon.com constitute a course of conduct or need they be related to the same topic/vendor/product?  If an individual posts 50% about dancing, 30% about politics and 20% about his hatred of a sports team, does that constitute a "course of conduct"?  Do the "acts" in the definitional section refer to the accessing of a facility of interstate commerce or to the posting of the speech?

Notably, other parts of the statute (not involved in this case) are defined in § 2266.  The failure to define the key terms involved in this case is fatal to the statute.  Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971)(invalidating city ordinance on vagueness grounds and observing that "the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensive normative standard, but rather in the sense that no standard of conduct is specified at all").  What causes "substantial emotional distress" to one person may cause moderate, little or no substantial emotional distress to another.

Similarly, what one person views as harassing (political jokes, chain letters)

22

may be amusing or merely annoying to another.  Applying the standard set forth by

the Supreme Court, individuals of ordinary intelligence must necessarily guess at

the meaning of these undefined and standardless statutory terms.  Because it is

simply impossible for ordinary people to understand what conduct is prohibited

under the statute charged by the Government in this case, let alone ordinary

lawyers to understand how to advise others about what is criminal and what is

lawful conduct on the Internet, the portion of the statute charged in the Indictment

should be voided on vagueness grounds. See Doe v. University of Michigan, 721 F.

Supp. 852 (E.D. Mich. 1989)(striking down University of Michigan harassment

policy on both vagueness and overbreadth grounds); State v. Bryan, 910 P.2d 212,

220 (Kan. 1996)(striking down stalking statute on vagueness grounds because

terms such as "harass" were undefined and lacked any objective standard to

measure the proscribed conduct).

    The title of the legislation currently pending to amend § 2261A(2)(A) speaks

volumes about the constitutionality of the existing statute.  It is entitled

"Simplifying the Ambiguous Law, Keeping Everyone Reliably Safe Act of 2011."

H.R. 196 112th Congress (2011).  This statute introduces a standard under which

"substantial emotional distress" should be measured, replacing the current

subjective standard with an objective one.  Id.  Given this legislation, there can be

no credible contention that the existing statute imposes unambiguous guidelines.[13]

---

[13] While the proposed legislation still contains some constitutional
infirmities, at least it is not entirely dependant on the varying sensibilities of

Justice Scalia's observation recently, in connection with a far less vague statute, the Armed Career Criminal Act, is apt here:

> We face a Congress that puts forth an ever-increasing volume of laws in general, and of criminal laws, in particular.  It should be no surprise that as the volume increases, so the number of imprecise laws. And no surprise that our indulgence of imprecisions that violate the Constitution encourages imprecisions that violate the Constitution.  Fuzzy, leave-the-details-to-be-sorted-out-by-the-courts legislation is attractive to the Congressman who wants credit for addressing a national problem but does not have the time (or perhaps the votes) to grapple with the nitty-gritty.  In the field of criminal law, at least, it is time to call a halt.

Sykes v. United States, 131 S.Ct. 2267, 2288 (Jun. 9, 2011)(Scalia, J., dissenting).

Mr. Cassidy is, of course, subject to the statute as currently written, before at least some of the ambiguities have been eradicated.  Its current iteration, unsupported by any standards to put any individual on notice of what is prohibited cannot stand.

> 2.   The  portion of § 2261A(2)(A) charged by the Government fails to establish standards that are sufficient to guard against arbitrary enforcement.

Lacking clear (or any) standards for determining what conduct is lawful and what conduct is unlawful, the portions of statute at issue here are particularly susceptible to arbitrary enforcement.  While prosecutorial discretion always accounts for some variation in enforcement, this discretion is reined in by the presence of clear, precise standards to guide law enforcement and prosecutors.  In the absence of these standards, controversial or unsavory speech (or speakers, such as those with a criminal record) may be targeted by law enforcement or prosecutors

computer users.

even though the speech does not fall within the narrow categories of speech unprotected by the First Amendment.[14]  Given the "standardless sweep" that results from undefined laws, "federal law enforcement entities would be improperly free to pursue their personal predilections." Kolendar, 461 U.S. at 358 (citation omitted). The absence of even minimal guidelines to govern the enforcement of § 2261A(2)(A) requires that it be invalidated on vagueness grounds.

>    D.    Well-Settled Canons of Statutory Construction Favor Mr. Cassidy's Interpretation of the Statute.

The Government's expansive and novel interpretation of the statute at issue is undermined by well-settled canons of statutory construction.  First, the doctrine of constitutional avoidance requires the court to construe the statute in a manner that does not chill any individual's right to free speech, right to fair warning of what conduct is prohibited, or right to be free of arbitrary enforcement of such statutes. Zadvyadas v. Davis, 533 U.S. 678, 689 (2001)(citation omitted).  While the court must endeavor to construe the statute narrowly when there are serious doubts about its constitutionality, it, of course, must not add omitted terms or redefine existing ones; a court cannot "rewrite a . . . law to conform it to constitutional requirements."  Reno v. American Civil Liberties Union, 521 U.S. 844, 884-85

---

[14] Mr. Cassidy has been convicted of prior offenses, some of which he received jail time, some of which he received probation, and some of which he received a fine. His contacts with the criminal justice system do not disable from using a computer or posting messages on social media websites, nor does it entitle him to lesser First Amendment protection than any other individual (at KPC or otherwise) who has had contacts with the criminal justice system.

(1997).  Re-drafting a statute is the function of the legislature, not the courts.
United States v. Lanier, 520 U.S. 259, 267 n.6 (1997).

If any "judicial gloss" put on the statute is tantamount to encroaching on the
role of Congress to define penal laws, it, of course, must be invalidated.  Id.  Thus, it
this canon of statutory construction must be harmonized with the long-established
principle that it is Congress, and not the courts, that write our laws.  As the
Supreme Court has observed: "It would certainly be dangerous if the legislature
could set a net large enough to catch all possible offenders, and leave it to the courts
to step inside and say who could be rightfully detained, and who should be set at
large.  This would, to some extent, substitute the judicial for the legislative
department of the government."  Reno v. American Civil Liberties Union, 521 U.S.
at 885 n.49 (1997)(quoting United States v. Reese, 92 U.S. 214, 221 (1875)..  Should
the Government wish to apply a broader version of the statute than is on the books,
it should lobby Congress, not  this court.

Finally, the rule of lenity favors Mr. Cassidy's construction of the portion of
the statute with which he is charged.  The rule of lenity requires that any
ambiguity in a criminal statute be resolved in the defendant's behalf.  Abbott v.
United States __ U.S. __, 131 S.Ct. 18, 31 n. 9 (2010).  The ambiguities in the
portion of § 2261A(2)(A) are legion.  Resolving them in favor of Mr. Cassidy requires
that Court to dismiss the Indictment.

E.  The Indictment Fails to State an Offense.

Regardless of the validity of the charged portion of § 2261A(2)(A), this court should dismiss the Indictment for the following fundamental reason: it fails to state an offense.  A motion that the indictment fails to state an offense may be made pretrial or at any time during the pendency of the case. Fed. Rule of Crim. P. 12(b)(2), (3)(B).  "It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts with constitute a prosecutable offense.  United States v. Coia, 719 F.2d 1120, 1123 (11th Cir. 1983).

An indictment cannot simply track the statutory language, but omit the factual gravamen of the offense. United States v. Buddenberg, 2010 WL 2735547 at *8-9.(N.D. Ca. 2010)(granting defendant's motion to dismiss for failure to state an offense where indictment omitted the particular speech or conduct at issue in the case).  This "offense depends crucially upon a specific identification of what the defendant [] said or did that constituted the 'course of conduct involving threats . . . harassment, and intimidation." Id. at 8 (citation omitted).  Yet, this information is completely missing from the Indictment.  As a result, the Indictment fails to alleged facts which state a prosecutable offense.  As the above authority holds, the proper remedy is dismissal of the Indictment.

## CONCLUSION

For the reasons stated above, Mr. Cassidy respectfully requests this Court to dismiss the Indictment currently pending against him.

27

Respectfully submitted,

JAMES WYDA
Federal Public Defender


_____

JAMES WYDA
Federal Public Defender
EBISE BAYISA
Assistant Federal Public Defender
LAUREN E. CASE
Staff Attorney
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
301/344-0600