IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA     *

      v.                         *      Crim. No. RWT-11-0091

WILLIAM LAWRENCE CASSIDY     *


**DEFENDANT'S MOTION REQUESTING A HEARING PURSUANT TO FRANKS
V. DELAWARE AND TO SUPPRESS TANGIBLE AND DERIVATIVE
<u>EVIDENCE</u>**

Defendant William Lawrence Cassidy, through counsel, hereby moves this

Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) for an Order of this

Honorable Court finding that Mr. Cassidy's arrest was made pursuant to a fatally

flawed arrest warrant and requests a hearing under Franks v. Delaware, 483 U.S.

154 (1978).

As fully explained in the Memorandum of Law, attached, the complaint and

the affidavit in support of the Complaint omits numerous factual allegations, that,

had they been included, would have defeated a showing of probable cause. The

officer who drafted the complaint omitted these facts with a reckless disregard for

the truth.

Because Mr. Cassidy can make the required dual showing that the omitted

information was left out with a reckless disregard for the truth and that the

information, had it been included would have defeated a probable cause finding, he

is entitled to a hearing pursuant to Franks v. Delaware, 483 U.S. 154 (1978)

wherein he can demonstrate that material perjury or recklessness occurred, and

that the warrant must be voided, and his arrest pursuant to the warrant is

unlawful.

Respectfully submitted,
JAMES WYDA
Federal Public Defender


_____

JAMES WYDA
Federal Public Defender
EBISE BAYISA
Assistant Federal Public Defender
LAUREN E. CASE
Staff Attorney
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
301/344-0600

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA    *

    v.                        *    Crim. No. RWT-11-0091

WILLIAM LAWRENCE CASSIDY    *

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION REQUESTING A
HEARING PURSUANT TO FRANKS V. DELAWARE AND TO SUPPRESS
TANGIBLE AND DERIVATIVE EVIDENCE

Mr. William Cassidy's right to be free from unreasonable government searches and seizures was violated when a warrant was issued for his arrest as a result of an affidavit in which the officer acted with reckless disregard for the truth in omitting information critical to a finding of probable cause.   Mr. Cassidy can make the requisite preliminary dual showing both that the information was omitted with reckless disregard for whether it would mislead and also that the information was material to a finding of probable cause.

I.  Procedural and Factual Context of the Search Warrant Affidavit.

The Charge

William Cassidy was charged on February 23, 2011, with interstate stalking in violation of 18 U.S.C. § 2261A(2)(A) and § 2261A(2)(B).  Mr. Cassidy is a 61 year old man who lived at 29720 Cove Road, Lucerne Valley, California

On February 2, 2011, Judge Day of the District of Maryland approved an application for an arrest warrant proffered by Special Agent Jessica Nye of the FBI Baltimore Field Office (hereinafter "Agent Nye").  Her affidavit in support of that

arrest, from which Mr. Cassidy's arrest and two searches flowed, is the subject of this motion. The affidavit was based entirely on allegations against Mr. Cassidy made by the leader and members of a Buddhist temple in Poolesville Maryland, called Kunzang Payul Choling (hereinafter "KPC"), with whom he has a history of interaction.

On February 9, 2011, the Court issued a search warrant for Mr. Cassidy's home on the basis of an affidavit submitted and sworn to by FBI Agent Scott Rings of the Los Angeles Field Office of the FBI. All factual information related to the investigation other than that concerning the location and characteristics of the house was based on the affidavit provided to Agent Rings by Agent Nye–the same affidavit used to apply for the arrest warrant. That affidavit is the subject of this motion. Agent Rings had no personal knowledge of the background investigation.

On April 11, 2011, Agent Nye submitted an application for a warrant to search a Mac laptop and an external hard drive. She used Mr. Cassidy's arrest and the prior search of his home as support for a finding of probable cause to search the computer and hard drive. This search was thus the fruit of the original, deficient affidavit in support of arrest.

Ms. Zeoli and KPC

The leader of KPC is Alyce Zeoli, also known as Catherine Burroughs, also known as Alyce Cassara, known publicly as Jetsunma Ahkon Lhamo (hereinafter "Ms. Zeoli"). According to KPC's website, Ms. Zeoli is allegedly the only Western born, female, enthroned tulku in the Tibetan Buddhist faith. A tulku is believed to

4

be a reincarnated lama. She was the subject of the mass market book "The Buddha from Brooklyn," written by Martha Sherrill, and has run a variety of businesses and other enterprises since her enthronement in 1988, including a hair care product named Lady Works, a record label called Blinded by View that released her musical recordings, and a company named Tara Enterprises Ltd. that manufactured and distributed clay buddha statutes.  Martha Sherrill, The Buddha from Brooklyn: A Tale of Spiritual Seduction xvii (2000).

KPC has about 30 nuns and monks. Id.  Ms. Zeoli and many of the nuns and monks maintain an active presence online through their website and Twitter accounts.  The KPC website includes a blog that is updated several times a day with Ms. Zeoli's teachings, videos linked from KPC's Youtube channel, and astrological predictions. Ms. Zeoli and KPC are especially active on Twitter.

Twitter

Twitter is a relatively new brand of social media that allows users to broadcast an unlimited number of written messages ("tweets") of 140 characters or less to people who choose to read.  Readers (known as "followers" on the site) can choose to ignore, rebroadcast ("retweet") from their own accounts, or respond to (by typing an @ character followed by the username of the original broadcaster) any message.

Each user maintains complete control over who is reading his or her tweets and whose he or she reads.  Users, like Ms. Zeoli did, may make all of their tweets public, which means that anyone with an internet connection can visit the user's

page and read her tweets.  Or users can make their tweets private by only allowing their followers access.  Each user is free to "follow" or read anyone's tweets, and to block any other user from reading or "following" her tweets, thereby allowing a user total control over who receives her messages.  It is possible to set up a page, for instance, that only one person has access to, or like many celebrities and public figures, to allow unlimited access to anything the celebrity chooses to post by anyone with an internet connection.

It is not unusual for users to accumulate thousands of tweets, often about a single subject.  For example, there are twitter accounts devoted to celebrities,[1] bunny rabbits,[2] and video games[3] with thousands of tweets each.  Twitter is host to many parody accounts, in which a user takes on a certain persona for purposes of comedic or critical commentary;[4] indeed, such accounts are specifically identified,

---

[1] BieberFeverfied, an account devoted to the teen celebrity Justin Bieber, had 63,477 tweets as of July 6, 2011; gagadaily, an account devoted to pop musician Lady Gaga, had 6,833 tweets as of July 6, 2011; derrickrosenews, an account devoted to famed basketball player Derrick Rose, had 6,408 tweets as of July 6, 2011

[2] HouseRabbit, an account devoted to bunny rabbit care and rescue, had 4,673 tweets about rabbits as of July 6, 2011;

[3] Account TRMK describes itself as the "definitive source for Mortal Kombat" and has tweeted about the game 5,730 times as of July 18, 2011.

[4] For example, twitter user feministhulk tweets as a post-modern feminist version of The Incredible Hulk with tweets like "HULK READ FEMINIST THEORY TILL HULK GET JOYDIZZY, THEN DIZZINESS REMIND HULK OF LIMINAL SPACE AS "CONSTITUTIVE OUTSIDE."  User falseSteveJobs tweets as a version of Apple CEO Steve Jobs with tweets such as "iPad 2. Faster, thinner, and cheaper than Lindsey Lohan.  It's a steal." (March 28, 2011).

discussed, and authorized by Twitter's policies.[5]

Twitter's terms of service also discuss inappropriate use of the website and make clear that the best way to avoid bullying and harassment is through use of the privacy settings, which allow a user to block others.   Each user must agree to the terms of service before opening an account.  Twitter is very often an unpleasant, crude, uncordial place to spend time, especially for public figures,[6] ex-boyfriends,[7] and teachers.[8]

Ms. Zeoli's and KPC members' use of Twitter and blogs

Ms. Zeoli currently has tweeted over 78,000 times under the account name JALpalyul.  She previously used an account under the name ahkonlhamo.  She commonly tweets several times an hour throughout an entire day.[9]  Many of her

---

[5]http://support.twitter.com/groups/33-report-a-violation/topics/148-policy-information/articles/106373-parody-commentary-and-fan-accounts-policy

[6] On April 15, 2011, Strange_Aeon tweeted: "Just because I am taking a short break from depressing news doesn't mean I do not still want all Republicans 2 die screaming, that is, after they watch their wretched offspring thrown upon the pyre."  On June 16, 2011, PomPrincessMomJ tweeted: "The only cuts that #Gop should get is across their throats!!"

[7] On July 6, kryptonae tweeted: I hate my ex boyfriends,,,off with their heads ;
BeadlesPoweer tweeted: You are a DEAD BOY ! " TALKING TO MY EX " x);
Dear_Rosaa tweeted: & i had told my ex if he didn't leave too he wass gunna end up locked up or dead .

[8] On July 6, 2011 marc_candela tweeted: Im n @Maca_love life goin to kill my english teacher with my little toe like a eagly;
stephanynaomi tweeted: Ima kill my bio teacher;
CatchM3_ifUcan tweeted: I'm bout to kill my teacher @CarpeDMG.

[9]For example, on July 10, 2011, there were approximately 70 tweets in a single 24 hour period.  On July 9, 2011, she tweeted approximately 60 times in a single 24 hour period.  July 8

tweets before January 2011 were directed at Mr. Cassidy.[10]   They regularly

interacted on twitter, retweeting each other's comments and adding their own.  The

format for this is, for example

user ahkonlhamo:" RT:@vajragurl now that evil sick bitch ahkonlhamo is tweeting

about blue babies! eeew! how evil is that! //This is why Natives have to die."

The entire bolded portion is one tweet from ahkonlhamo (Ms. Zeoli), who is

repeating vajragurl's original tweet ("now that evil sick bitch ahkonlhamo is

tweeting about blue babies! eeew! how evil is that!") and adding her own response

(italicized, "This is why Natives have to die") after a double backslash. Retweeted

messages are saved in the retweeter's account even if the original user deletes the

message, and make it easier to see Twitter conversations, rather than a one sided

string of tweets.

    The monks and nuns of KPC also interacted with Mr. Cassidy via Twitter.

Several of them tweet almost as frequently as Ms. Zeoli.  One or more of them of

---

50 tweets.  From July 18- July 19, 2011, there were over 40 tweets while Ms. Zeoli was traveling
for a retreat.

    [10]Ms. Zeoli tweeted from account ahkonlhamo; on August 6, 2010, she tweeted, adressing
another user "@shamanspell hmm. methinks #vajragurl got so ugly + wished us all hell n death
because we really are doing quite well. Helping folks."; on July 5, 2010, a date noted in the
affidavit for the large number of tweets directed at Ms. Zeoli, there was no reference to her
responses, which included:
"@vajragurl @shamanspell. Yes, I hear you can buy chinese recognition. Or find a sleezy
half-assed tulku to help. Gotta B a crooked one tho."; on July 16, 2010, she retweeted a message
from vajragurl and added her response (bolded) " RT:@vajragurl now that evil sick bitch
ahkonlhamo is tweeting about blue babies! eeew! how evil is that! //This is why Natives have to
die."

them also maintain a separate blog, http://protectingnyingma2.wordpress.com, which is mainly concerned with writing about Mr. Cassidy and any other person who criticizes or comments about KPC.  This blog was cited as a factual source in Agent Nye's affidavit.   Mr. Cassidy maintains a blog named Digital Tibetan Buddhist Altar, which contains a variety of posts about astrology, rabbit appreciation generally, his pet rabbits specifically, Tibetan Buddhism generally, and KPC specifically.

Information presented to Judge Day

Agent Nye's affidavit in support of the application for a search warrant consisted almost entirely of uncorroborated assertions by Ms. Zeoli and KPC about which Agent Nye did none of her own corroboratory investigation.  It also includes a listing of 68 tweets she attributes to Mr. Cassidy, as well as excerpts from four blog posting she attributes to him.  She did some investigation that links the IP address used by Mr. Cassidy's home in California with various twitter and email accounts, and included his criminal history at the end of the affidavit.[11]

Information not presented to Judge Day

Despite clear examples in discovery made available by the government, the affidavit included no information about the back and forth nature of Mr. Cassidy's online interactions with KPC, including multiple requests by him that they cease and desist their abuse, and several clear statements that Mr. Cassidy intended

---

[11]A detailed list of the items included in the affidavit is set forth in Defendant's Motion Challenging Probable Cause to Arrest, filed simultaneously herewith.

them no harm.  The affidavit also included no information about the content of

KPC's counter blog, http://protectingnyingma2.wordpress.com, other than a single

sentence naming it as a site run by KPC members "to defend (Victim 1)."  The

affidavit did not provide any corroboration for any of the facts asserted by Ms. Zeoli

and KPC regarding their personal interactions with Mr. Cassidy and his personal

history, and provided only IP address  confirmation that someone in Mr. Cassidy's

home was indeed tweeting and blogging from accounts that included negative

statements about KPC and Ms. Zeoli.

II.     Agent Nye Acted with Reckless Disregard for the Truth in Omitting at
        Least Four Different Categories of Critical Facts Material to a Finding of
        Probable Cause in Her Affidavit for a Search Warrant Which, If Included,
        Would Have Defeated Such a Finding.

        To be entitled to a hearing under Franks v. Delaware, a defendant must

make a substantial preliminary showing that an affidavit for a warrant was lacking

in probable cause.  438 U.S. 154 (1978).  See United States v. Colkley, 899 F.2d 297

(4th Cir. 1990) (applying Franks standard to affidavits in support of warrants for

arrest).  This requirement applies with equal force where a defendant seeks to show

that omissions from a affidavit affected the finding of probable cause.  United States

v. Tate, 524 F.3d 449, 455 (4th Cir. 2008).  To make a preliminary showing that

omissions had this effect, a defendant must show two things.  First, he must show

that the omissions were designed to mislead either knowingly and intentionally or

with reckless disregard for whether they would mislead.  Id.  Second, he must show

the materiality of the omissions; that is, he must show that had the omitted

information been included, it would have had a material effect on the magistrate's finding of probable cause.  Id.

Here, Mr. Cassidy can make the requisite dual showing.  This was not mere failure to track down every lead, but a reckless misrepresentation of the nature of the activity being charged.  As the Court has made clear, the burden when attempting to prove that an officer recklessly disregarded the truth through omission is even higher than a standard Franks challenge. Tate at 454.  Unlike many other recorded cases, however, the instant case is not one of merely a single omission of a fact of questionable relevance; here, the omissions so pervade the affidavit that they certainly meet this higher standard.

Agent's Nye's disregard for the truth and deliberate omission of vitiating facts pervades the affidavit, and is especially acute in a few key categories.  She failed to include any assertion that she investigated the many threats that Cassidy alleged were lodged by Ms. Zeoli and her followers against him, she failed to include a variety of Mr. Cassidy's tweets that indicate he had no intent to cause any harm, she failed to investigate or include the context or background of any of the allegedly threatening tweets posted by Cassidy, she misrepresented the contents of Mr. Cassidy's blog, and she failed to establish the credibility of her sources.  These various omissions of critical information accumulate one on top of the other to establish reckless disregard for whether the affidavit would mislead the judge. Inclusion of that critical information would have had a fatal effect on a determination of probable cause to issue a search warrant in this case.

11

A. Agent Nye acted with reckless disregard by failing to provide the facts underlying her conclusory statements and by acting in a manner inconsistent with her allegedly extensive computer crimes experience.

Agent Nye's failure to tell half the story in her affidavit amounts to reckless disregard for the truth.  The Fourth Circuit looks to various factors in deciding whether an officer acted with reckless disregard for the truth.  Tate at 456 (describing the way in which the agent failed to describe the underlying circumstances of his conclusory statement that trash bags were "easily accessible.") Tate at 452-453 (describing the officer's experience handling another case involving a trash search.) Courts have persuasively delineated several key factors in evaluating whether an officer omitted information with reckless disregard.  These factors include, but are not limited to, any exigency around the affidavit, the officer's level of training and experience, whether the officer consulted an attorney, and whether the office disclosed underlying facts of any conclusory statements in the affidavit. See, e.g., United States v. Alvarez, 127 F.3d 372, 375 (5th Cir.1997) (citing United States v. Namer, 680 F.2d 1088, 1094 (5th Cir.1982)), United States v. Tate, 524 F.3d 449, 455 (4th Cir. 2008).

Conclusory Statements

While all of the factors weigh in favor of a finding of reckless disregard here, the most crucial is Agent Nye's failure to describe the facts underlying the frequent conclusory statements in the affidavit.  From the beginning of her description of the background of her investigation, Agent Nye failed to fully disclose the basis for facts she asserted as true.  The section begins with allegedly true information she cites to

the website www.tara.org.  What Agent Nye fails to include is that www.tara.org is the website run by Ms. Zeoli and KPC.  This failure is in contrast to the information that follows, which Agent Nye chose to directly attribute to Ms. Zeoli and KPC.  The information from the website is the very information Mr. Cassidy and others have called into question in tweets and other public postings, making tara.org at the very least a source requiring attribution or description. The information directly attributed to Ms. Zeoli and KPC is found in subsections 6a-e, which details a version of the history of Mr. Cassidy's relationship with Ms. Zeoli and KPC, none of which was corroborated in any way. None of the information was corroborated and Agent Nye gave no dates any of the conversations happened.[12]

In paragraph 11, Agent Nye lists approximately 70 tweets that came from various twitter accounts she alleged belonged to Mr. Cassidy, most of them under the user name vajragurl.  However, she does not describe how she found or selected these particular tweets.  This foundational information is crucial because if she combed through all 8,000 tweets and selected these, she was certainly reckless in disregarding the various times vajragurl specifically stated s/he had no intent to physically harm Ms. Zeoli or KPC.  If Agent Nye was provided those tweets by Ms. Zeoli or KPC, her choice to include them in the affidavit without doing any investigation of her own was equally reckless.  As the affidavit existed, the magistrate had no way of determining her methods.

---

[12]Mr. Cassidy reserves the right to challenge all information for staleness as a result.

Within paragraph 11, in subsection r, Agent Nye included a footnote to provide an explanation for the content of the tweet.  The explanation is cited to http://protectingnyingma2.wordpress.com/page/2/.  While she does later reference this site as one run by KPC students to mount attacks against anyone who says anything critical about Ms, Zeoli or KPC, she cites it as a source of truth in this section with no explanation of what it is.  Additionally, even if she had explained the factual basis for this conclusory explanation, she omitted the second half of the explanatory post, in which KPC member authors specifically explain why this particular alleged tantric invocation is not threatening when coming from who they believed was Mr. Cassidy.[13]

When introducing Mr. Cassidy's alleged blog in paragraph 19, Agent Nye asserted without any personal knowledge that KPC's financial information went missing after Mr. Cassidy had been at the KPC retreat site, and that the information was later posted on his alleged blog.  She includes no references to dates the information was posted or how she knows this information.  She ends the description of his blog with the conclusory statement that "Cassidy continued to post defamatory information on the Digital Tibetan Buddhist Altar and continues to the present" without actually citing to any specifically defamatory content.  The excerpts from his blog do indeed reference KPC at least twice.  However, Office Nye cites no basis for her inclusion of paragraph 20 (a description of a silver hammer on a hard

---

[13] This omission is discussed more fully under the description of Agent Nye's omissions in II. B. 4.

head).  In addition, her basis for concluding that paragraph 23 refers to KPC is its similarity to something Ms. Zeoli once said.  Even if this were not conclusory, the content is in no way defamatory, and neither are the other three postings Agent Nye included.  Additionally, even if the statements were defamatory, there is no federal criminal defamation statute, and defamation is not an element of the charged crime.

The affidavit also implicates Mr. Cassidy in a matter with which his only connection is the inclusion of his name in a document.  In paragraph 27, Agent Nye alleges that Mr. Cassidy participated in a "campaign of harassment" with Nydia Alexander because Ms. Alexander filed an order of protection against Ms. Zeoli.  Office Nye states no factual basis for this outside of allegations by Ms. Zeoli.

Finally, and perhaps most importantly, Agent Nye makes a variety of statements in paragraph 25 pertaining to Ms. Zeoli's alleged emotional distress without establishing any basis for her personal knowledge or observation of the asserted facts.[14]  She asserts "The consequences of this harassment has [sic] forced Victim 1 not to leave her home in a year and a half except going to meet with her psychiatrist."  This claim is at best specious, as it lacks any factual basis that would allow one to conclude it was directly related to Mr. Cassidy's conduct.  The published, mass market book The Buddha From Brooklyn, which Martha Sherrill wrote after a lengthy period of interviews and direct observations of Ms. Zeoli,

---

[14]Mr. Cassidy contends that a statute that criminalizes infliction of substantial emotional distress is not constitutional on its face or as applied in this case.  However, even if such a statute were constitutional, the complete lack of underlying facts asserted in this paragraph would still amount to reckless disregard for the truth.  See Defendant's Motion to Dismiss the Indictment.

repeatedly references the fact that Ms. Zeoli often goes for long stretches of time without leaving her house except for hair and nail appointments or dinners with Sherrill.

The next statement alleges that "Victim 1 also has not taught to her students since June 2009." This is asserted in spite of the fact that, as discussed, Ms. Zeoli tweets her teachings (or "tweachings") several times an hour, and they are often compiled into blog posts to supplement her other, longer, teaching blog posts. Agent Nye continues by saying "Victim 1 has suffered numerous physical ailments from the ongoing harassment" and fails to state what those ailments are or the basis for her knowledge of the causal relation between those ailments and the alleged harassment, as opposed to the many ailments Ms. Zeoli already suffered. Agent Nye alleges that Mr. Cassidy tweeted about Ms. Zeoli's motor home, and yet failed to include those tweets in her listing earlier in the affidavit. Indeed, there is no evidence Agent Nye actually saw the tweets herself in a way that would allow her to swear and affirm their existence, as she has here. This description of the effects of Mr. Cassidy's alleged actions is crucial because the impact of conduct charged in this particular statute is an element that must be proven. The lack of any underlying information to support the entirely conclusory assertions in this section show that Agent Nye was acting with reckless disregard for the truth of the matters asserted.

Officer Training and Experience

Another important factor is the consideration of officer experience and training. Agent Nye, in her affidavit, describes her expertise in the area of computer

16

crimes.  The affidavit represents that she has spent five years investigating crimes

involving computers and the internet and has specialized training in this area from

classes, seminars, and work experience.  And yet, despite her technological expertise,

she failed to represent, include, or investigate any facts surrounding the dialogue-

like nature of Mr. Cassidy's interactions with Ms. Zeoli and KPC.  Agent Nye

fundamentally misrepresented the nature of Twitter–and internet communication in

the age of social media generally–by omitting any evidence that Ms. Zeoli and KPC

were threatening Mr. Cassidy or joking back and forth with him.  And, despite the

fact that she has investigated many cases before, she failed to corroborate almost all

of the information in the warrant, much of which could have been done through

simple internet searches.[15]

Lack of Exigency

Third, there is no evidence of exigency that would have prevented Agent Nye

from further investigating or corroborating any of the information, or consulting

with an attorney before charging what is surely a novel legal claim.  In fact, in the

affidavit itself Agent Nye asserts that KPC members monitored Cassidy's

whereabouts, and therefore knew he was across the country

and presented no physical threat, and that their contact with him was ongoing–in

other words, there was no recent spike in threats or violence that would create

---

[15]For example, the website www.topsy.com allows searches of a specific user's entire
history of tweets–going back much further than the 30 days the search function in Twitter allows.
A legal intern with no specialized technological training found the site by typing "how to search
tweets" in a google.com search.

exigency.

While all of these factors support a finding that Agent Nye acted with reckless disregard for whether her omissions would mislead the court, the clearest evidence of this comes from the content and the sheer volume of the critical omissions themselves.  They are discussed in detail below.

B. The omitted facts are material to a finding of probable cause

Defendants must make a detailed offer of proof in a request for a Franks hearing.  Tate at 455. This offer constitutes a substantial preliminary showing that the facts alleged, if not omitted, would have materially affected a finding of probable cause. Id.  There is no discoverable precedent for what evidence would be sufficient for a finding of probable cause under this statute.  However, given the language of the statute and the allegation in the affidavit, the reviewing judge would have to find there was probable cause to believe that Mr. Cassidy's conduct had caused substantial emotional distress and fear for Ms. Zeoli.  All of the omissions from Agent Nye's affidavit are material to this issue, as they all relate to circumstances about or known to Ms. Zeoli that vitiate the allegedly intimidating nature of Mr. Cassidy's conduct.


1. Agent Nye's omission of tweets that directly contravene Mr. Cassidy's alleged intent to cause harm.

Discovery made available by the Government includes a record of all tweets from account "vajragurl", which the Government alleges belonged to Mr. Cassidy,

18

from July 4, 2010, to October 20, 2010.  While this is only a portion of the record and does not fully reflect the many hundreds of tweets aimed at him by other users, it contains direct evidence that Mr. Cassidy did not intend to cause harm to Ms. Zeoli or members of KPC.  Agent Nye ignored these tweets and did not include them in the affidavit.  They include:

a. Friday, August 13, 2010, 5:53 pm: "It is my opinion that Alyce Zeoli is a dumb ass but that should not be extended to imply that I wish her any harm.  Vogel v. Felice."[16]

b. Friday, August 13, 2010, 8:56 am: "I have many times offered the olive branch to you and you have danced around & around that without any real interest in peace #stopthehate"[17]

c. July 5, 2010, three successive tweets within two minutes aggregate to: (at 7:46:49 pm) "You should please understand I do not wish any of you any harm at all. I only wish you would remove the cause of your own suffering. (at 7:47:35 pm) Other than that it is fun to play back and forth like on the basketball court or something... your mama so fat... stuff like that...."  (at 7:48:07 pm) "but you take yourselves so seriously... too seriously... it's gonna give ya a cancer or something.  Ya need to

---

[16] Mr. Cassidy is most likely citing a case from California in which defendant's inclusion of two political candidates in a list of "dumbasses" posted online did not constitute defamation because plaintiffs were unable to show actual malice.  Vogel v. Felice, 127 Cal. App. 4th 1006, 1017 (Cal. Ct. App. 2005).

[17] The # symbol is used with a phrase that indicates the subject of the tweet.  It serves as a way to aggregate all tweets about a particular subject in Twitter's search feature.

lighten up."

    2. Agent Nye's omission of Mr. Cassidy's requests that Ms. Zeoli and KPC cease and desist and tweets alleging threats against him.

    Mr. Cassidy requested July 16, 2010, in a tweet directed at one of Ms. Zeoli's accounts, "I have asked you on several occasions to cease and desist from your wilful conduct but alas you do not." Mr. Cassidy made similar requests in at least 21 separate tweets on the following dates:

- July 9, 2010  (three times)

- July 14, 2010, (two times)

- July 25, 2010 (two times)

- August 9, 2010

- August 12, 2010 (five times)

- August 13, 2010 (three times)

- August 20, 2010 (six times, each directed at a specific KPC member account)

- October 1, 2010

- October 5, 2010

    Discovery made available by the government does not include records of Ms. Zeoli's tweets, nor those of any other KPC members.  However, Mr. Cassidy retweeted some of their tweets, which gives context to his repeated requests that they stop threatening and harassing him.  For ease of reading, the entire tweet is italicized and anything written by Ms. Zeoli is bolded.  These tweets include:

    a. July 5, 2010, 4:03 pm vajragurl retweeted a post by JALpalyul (Ms. Zeoli)

in which she had retweeted one of his posts (in which he was addressing a user named shamanspell) and added her threat after the double backslash.  JALpalyul RT: @vajragurl @ shamanspell told you to find out for yourself. More fun that way. // no prob. puss.  U got surprises coming too.  Soon.

b. July 5, 2010, 9:43 pm vajragurl retweeted a post by JALpalyul in which she had retweeted one of his posts and added her response after the double backslash. JALpalyul RT: @vajragurl I wish you ALL the best, Couger Chickenwing.  Maybe next time you'll think twice be // alright bring it bitch watcha got?

Tweets from the user vajragurl that directly state a request that Ms. Zeoli and KPC members stop threatening and harassing him, along with the now limited record of threatening language directed at vajragurl, if included in the affidavit, would have weighed against a finding of probable cause.

3. Agent Nye's omission of facts related to quantity and content of tweets by Ms. Zeoli and KPC members.

In her affidavit, Agent Nye asserts that user vajragurl has over 8,000 tweets, including over 350 on July 5, 2010 which were all directed at KPC. What she fails to include is that a dozen of those of those were part of a discussion about China, after KPC members alleged vajragurl was a spy and made disparaging remarks about China.  Several dozen are vajragurl's responses to their attacks on one of his alleged spiritual leaders, tenparinpoche.  Quite a few more were side conversations he was having with other twitter users.

Agent Nye also asserts without corroboration that KPC believes most of the

8,000 tweets are directed at them.  As recited above in the procedural and factual

history, Ms. Zeoli has tweeted over 78,000 times from her account named JALpalyul.

User aniyeshi, who describes herself as a "follower of Jetsunma" in her account

description, has over 11,000 tweets. User SangyeH, who describes herself as a

"Buddhist Nun at Kunzang Palyul Choling" has over 45,000 tweets.  User kpcmonk

has close to 20,000 tweets to his name.  Many of their tweets from the period of time

recorded in the government's discovery have been deleted and are no longer

searchable.  Because vajragurl retweeted a few of them, there is a limited record,

reflected in other parts of this argument.  However, there is no evidence Agent Nye

even attempted to look at the many thousands of tweets that were potentially aimed

at Mr. Cassidy, to which he was responding.

The omission of facts related to the quantity and content of the tweets of Ms.

Zeoli and other KPC members and followers  represents a crucial misrepresentation

of the nature of Mr. Cassidy's comments and his use of Twitter generally, and would

defeat probable cause by showing that the interactions were conversational rather

than one sided.

4.  Agent Nye's misrepresentation of both Mr. Cassidy's blog and that of
KPC members.

In addition to her omission of crucial information about Twitter and the

record of tweets directed at Mr. Cassidy, Agent Nye omitted important information

about and from the blogs of both Mr. Cassidy and KPC.  Mr. Cassidy maintained a

weblog with many hundreds of entries pertaining to astrology, rabbit appreciation

generally, his pet rabbits specifically, tibetan buddhism generally, and KPC specifically.  In her affidavit, Agent Nye described only two entries that directly mentioned KPC, two others she alleges relate to KPC without factual basis, and the financial records of KPC that were allegedly posted there (though this claim was entirely unsubstantiated).  In this context, she quoted two entries directly mentioning KPC that, while perhaps insulting, were in no way threatening. Another entry she quoted said "yes... beauty.  A silver hammer on a hard head is beautiful, particularly if it is administered before one's funeral pyre catches blaze. Otherwise one's head swells and explodes."  Absent even a single sentence indicating that Mr. Cassidy often writes about esoteric, abstract topics related to buddhism and the beauty of the desert, and with only allegations that he writes about KPC, this entry could be viewed as threatening.  But, as in the rest of the affidavit, Agent Nye omitted any mitigating or vitiating facts that provide context, choosing instead to disregard the misleading nature of the assertions.

     She also omitted a critical circumstance that explained vajragurl's repeated tweets about owl and raven feathers separating.  Her characterization of those tweets involved a KPC member's blog, which she cited for her assertions about the meaning of the tweets.  Vajragurl posted a few times throughout October and November, and several times in early December, tweets relating to owl and raven feathers.  Agent Nye cited a post from http://protectingnyingma2.wordpress.com/ that explained

          "Owl and raven feathers separate" refers to a specific tantric magical

23

> invocation to "separate" (i.e., remove) the defenses of the enemy so that the enemy is then left defenseless against attack. This probably stems from the ancient belief in many aboriginal cultures that owls and ravens represent the two poles of "good" and "evil", based on white owl feathers and black raven feathers seen as symbols of polar opposites. Owl and raven feathers are also symbols of various protector deities in Vajrayana Buddhism."

However, Office Nye omitted the following paragraph from the same post, in which the author states:

> While the idea of magical attack is widely discounted in these so-called modern times, there are many stories attesting to the power of tantric magic practitioners in Tibet. In the hands of a true master, such attacks, usually in the form of Vajrakilaya, the "Vajra nail", could be devastating and sometimes fatal. Of course, the operative phrase here is "true master", which Bill Cassidy patently is not. Let us pray that his attacks remain impotent. (Emphasis added)

Her deliberate omission would lead a reviewing magistrate to believe that KPC and Ms. Zeoli felt threatened by his repeated use of the phrase.  The omitted portion directly confirms that they did not.  Agent Nye failed to investigate or attest to the context of his use of the phrase.  This information, had it been included, would have defeated a finding of probable cause.

## CONCLUSION

For these reasons, any and all items of evidence seized from Defendant or derived therefrom are the product of unlawful searches and must be suppressed.

Respectfully submitted,
JAMES WYDA
Federal Public Defender


_____

EBISE BAYISA
Assistant Federal Defender
LAUREN CASE
Staff Attorney
6411 Ivy Lane
Greenbelt, Maryland 20070
(4l0) 962-3962

## REQUEST FOR HEARING

Pursuant to Rule 105.6 of the Local Rules of the United States District Court for the District of Maryland, a hearing is requested on the Defendant's motion.

_____
EBISE BAYISA
First Assistant Federal Defender