**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. RWT-11-0091** |
| | : | |
| **WILLIAM CASSIDY** | : | |

**OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS INDICTMENT, FOR
FRANKS HEARING AND TO SUPPRESS EVIDENCE**

The United States of America, by and through undersigned counsel, hereby opposes

defendant's Motions to Dismiss the Indictment, for a *Franks* Hearing and to Suppress Evidence

Obtained from the Search Warrant executed in or about February and April 2011 and as reasons in

support, states the following:

**FACTUAL SUMMARY**

1.      *The Complaint Affidavit of FBI Special Agent Jessica Nye*

On or about February 2, 2011, FBI Special Agent Jessica Nye ( "Nye") submitted an

affidavit ("the Nye affidavit") in support of an arrest warrant, alleging probable cause that the

defendant, William Cassidy, committed interstate stalking in violation of 18 U.S.C. §2261A(2)(A).

In general, the Nye affidavit charged that Cassidy, a self-proclaimed Buddhist American tulku

("reincarnate master"), befriended Victim 1, believed to be the only American-born female tulku

officially enthroned as a reincarnate llama, and offered to provide financial and legal assistance to

Victim 1 and other members of Victim 1's sect, known as KPC.  When Victim 1 and KPC

subsequently confronted Cassidy with claims that he was not a legitimate tulku, he left KPC's

compound; used Twitter and blogs to harass, intimidate and threaten Victim 1; and ultimately caused

Victim 1 to undergo emotional distress.  The Nye affidavit also set forth information that Cassidy

used at least one other alias, was a convicted felon and had other run-ins with the law, and falsely claimed an impending fatal illness to ingratiate himself with KPC members and Victim 1.   Nye stated in her affidavit that she was "personally involved in the investigation," and had based her information on "conversations with other law-enforcement officers and agents, [personal] interviews of witnesses, [and her] examination of documents, reports and other records."   She further noted that she had been previously assigned to computer investigations.   The Nye affidavit set forth the background of the investigation, based on Nye's conversations with Victim 1 and KPC members, including how the defendant became associated with KPC and Victim 1.

In addition, Nye set forth almost 70 tweets that came from Twitter account "vajragurl" and "aconlamho" (the actual content of the various tweets was set forth in the affidavit), as well as other Twitter accounts that various subpoenas disclosed were connected to Cassidy.   Some of the tweets described in the Nye affidavit include language like : "I have just one thing I want to say to [Victim 1] ... go kill yourself...."   There are numerous tweets to Victim 1 on the same day. The Nye affidavit also stated that the defendant had tweeted more than 8000 times, all except a few hundred of which pertained to Victim 1 and KPC.

In addition to the tweets, the Nye affidavit described several blogs (the actual content of which was set forth in the affidavit) that various subpoenas disclosed were connected to Cassidy; information from KPC members who themselves were tracking Cassidy's communications; and certain historical information about Cassidy and Victim 1, including a failed attempt by Cassidy – through a friend named Jewel Annabella, a/k/a Nydia Alexandra – to secure a restraining order against Victim 1.   The Nye affidavit also included information about the emotional distress suffered

by Victim 1, based on information supplied to Nye by Victim 1, as well as information about court records and court appearances pertaining to the defendant.

The Nye affidavit also set forth portions of two stalking statutes in question, 18 U.S.C. §2261A(2)(A) and (B), noting among other things, that, under §2261A(2)(A), anyone who, with the "intent to kill [or] harass ... uses any ... facility of interstate commerce to engage in a course of conduct that causes substantial emotional distress to that person ... [is guilty of a crime]." The facts included in the Nye affidavit went directly to the elements of harassment, the use of an interstate facility and the infliction of substantial emotional distress. The arrest warrant was subsequently signed by Judge Charles B. Day. Cassidy was arrested and later indicted by a federal grand jury for the same offense.

2.      *The Search Warrant Affidavit for Cassidy's Residence*

On February 9, 2011, Magistrate Judge David T. Bristow in the Central District of California issued a search warrant for Cassidy's residence, based on an affidavit submitted by a second FBI agent, Scott Rings ("the Rings affidavit"), the facts for which consisted of the identical information provided in the Nye affidavit, along with additional information developed by Rings connecting the defendant to the residence to be searched.

3.      *The Search Warrant Affidavit for Cassidy's Laptop and Hard Drive*

Finally, on April 9, 2011, Nye submitted a second affidavit and application for a search warrant ("the second Nye affidavit"), this time for Cassidy's Mac laptop and an external hard drive, recovered during the search of Casssidy's residence in California and then shipped to Maryland. The probable cause for the search of the laptop and hard drive consisted of, among other things, the identical information provided in the Nye affidavit, as well as additional facts related by

another resident of the Cassidy home – Jewel Annabella, a/k/a Nydia Alexandra – that Cassidy had used her e-mail account without her consent.  The search warrant was subsequently issued by Magistrate Judge William Connelly.

Based on the above facts, the defendant has now moved to suppress the arrest, arguing that the arrest warrant was not supported in the accompanying Nye affidavit by probable cause.  The defendant also seeks a *Franks* hearing, alleging that the Nye affidavit omitted "numerous factual allegations" that, if included, "would have defeated a showing of probable cause" and that Nye omitted those facts with "reckless disregard for the truth."  The defendant alleges that Nye knowingly and intentionally, or with reckless disregard, omitted material information from the Nye affidavit, and that had the affidavit included such omitted information, it would not have supported a finding of probable cause.  Among other things, the defendant argues that Nye made material omissions with respect to the defendant's alleged numerous tweets that he intended no harm to Victim 1; and, that Nye failed to disclose "cease and desist" tweets by the defendant, made to Victim 1 and KPC.  The defendant's allegations are unsupported by any corroborating exhibits, although the government believes that most of the basis for the defendant's claims originate from discovery provided earlier by the United States.

The defendant further alleges that Nye provided conclusory statements, particularly as they related to corroboration for the defendant-victim relationship and for the victim's emotional distress in support of probable cause to arrest.

The defendant further moves to suppress tangible and derivative evidence obtained from the searches of the defendant's residence and computer hardware, arguing that it was essentially the fruit of an illegal arrest.

Finally, the defendant moves to dismiss the Indictment, alleging the statute in question – 18 U.S.C. § 2261A(2)(A) –  is unconstitutionally vague and overbroad.

**ARGUMENT**

1.      *The Nye Affidavit Contained Sufficient Probable Cause to Arrest*

Nye composed the Nye affidavit based on statements from Victim 1 and KPC members; tweets and blog entries, some of the content of which was included in the Nye affidavit; IP information showing blog activity arguably originating from the defendant but at the very least originating in his residence; IP information showing tweets arguably originating from the defendant; and, information regarding the defendant's criminal history.  It is abundantly clear from the manner in which the affidavit is written that Nye viewed the tweets and blogs herself and caused the issuance of the subpoenas that inevitably connected the defendant to the various Twitter accounts and to the blogs.  It is, of course, in any event irrelevant that Nye personally participated in the investigation, since hearsay and other forms of third-party information are entirely legitimate bases for probable cause.  *United States v. One Parcel of Real Estate*, 906 F.2d 110, 113 (4th Cir. 1990).

While common rumor or report, suspicion, or even strong reason to suspect are not sufficient to constitute probable cause, evidence establishing "probable cause" need not be sufficient to establish guilt. *United States v. Peisner,* 311 F.2d 94, 104 (4th Cir. 1962).  The Supreme Court has stated that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.... [I]nnocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause than the security of our citizens demands." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983); *United States v. Lalor,*996 F.2d 1578, 1581 (4th Cir. 1993)**.**

To begin with, warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *United States v. Ventresca,* 380 U.S. 102 (1965).   If we "desire to encourage use of the warrant process by police officers," *Gates,* 462 U.S. at 237 n. 10, "the worst course of action would be to pick apart warrant affidavits from the pristine perch of hindsight or to penalize officers for securing what the law requires." *United States v. Clenney,* 631 F.3d 658, 665 (4th Cir. 2011).  Obtaining a warrant is a process overseen by a neutral magistrate. Magistrates make an independent judgment about the sufficiency of the warrant affidavit. *Id.*  They are free to reject warrant applications that provide scant or insufficient evidence. *Id.*  Indeed, an important rationale for the *Franks* ruling was a respect for the warrant process and the capabilities of magistrates. *Franks,* 438 U.S. at 166–67.

A magistrate issuing an arrest warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability [that a person has committed an offense]." *See Illinois v. Gates,* 462 U.S. at 238.  "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle,* 540 U.S. 366, 370 (2003).  "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232.  For that reason, in reviewing the sufficiency of a supporting affidavit, courts avoid applying" 'hypertechnical' scrutiny ... lest police officers be encouraged to forgo the warrant application process altogether." *United States v. Robinson,* 275 F.3d 371, 380 (4th Cir.2001) (quoting *Gates,* 462 U.S. at 236).

The process of preparing a warrant affidavit requires affiants to exercise discretion

by selecting certain facts for inclusion and others for omission. *United States v. Tate,* 524 F.3d

449, 454–55 (4ᵗʰ Cir. 2008). "An affiant cannot be expected to include in an affidavit every piece

of information gathered in the course of an investigation." *United States v. Colkley,* 899 F.2d

297, 300 (4ᵗʰ Cir. 1990).

     In this instance, the Nye affidavit was supported by sufficient indicia of probable

cause to arrest.  Probable cause exists when the facts and circumstances known to the officer

"would warrant the belief of a prudent person that the arrestee had committed or was committing

an offense." *United States v. Garcia,* 848 F.2d 58, 59-60 (4th Cir.); *see Wilkes v. Young,* 28 F.3d

1362, 1365 (4th Cir.1994) ("Probable cause only requires enough evidence ' "to warrant a man

of reasonable caution in the belief that" an offense has been or is being committed.' ").

     The total circumstances informing Nye's decision in this case about whether she

had probable cause to arrest included her personal experience with the use of computers; her

investigation of the website, www.tara.org[1] to determine the status of Victim 1 within the

Buddhist community; her conversations with Victim 1 and KPC members indicating that the

defendant had ingratiated himself into KPC under false pretenses, including alleged false

information that he was stricken with a fatal disease and alleged false information that the

defendant had held a recognized Buddhist title; and, her review of Twitter accounts, including

the account "vajragurl" and "aconlamho,"and the numerous tweets sent from that account to

---

     [1]    The defendant alleges that the website was run by KPC and Victim 1, and that
somehow required Nye to corroborate the source of the content of the website. However, Nye used
the website for basic biographical information on Victim 1 and KPC and attributed the information
to the website.  It is purely background and in no way material to the probable cause sought in the
Nye affidavit related to stalking.

Victim 1 and KPC, including the language of approximately 70 tweets that included language directed at Victim 1, like "do the world a favor and go kill yourself."

The defendant instead argues that the Nye affidavit "consisted almost entirely of uncorroborated assertions by [Victim 1] and KPC about which Nye did none of her own corroboratory investigation." *Memo in Support of Motion for Franks Hearing,* at 9. Of course, "[t]he prevailing view is that corroboration for citizen reports of criminal acts is unnecessary." *United States v. Garrett,* 940 F.2d 653, *1 (4th Cir. 1991) *citing* 1 W. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 3.4(a) at 717 & n. 26 (2d ed. 1987 & 1991 Supp.) (citing cases). The same is true when basing probable cause on reliable information provided by victims. *See Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir.1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself"). Of course, in this case, Nye did not rely solely on the uncorroborated statements of the victim. Instead, she spoke to others and reviewed additional, corroborative information, as described below, the sum total of which was "sufficient to warrant a prudent man in believing that [McKinney] had committed or was committing an offense" and it therefore gave rise to probable cause. *See Fisher v. Washington Metro. Area Transit Authority,* 690 F.2d 1133, 1138 (4th Cir.1982) (quoting *Gerstein v. Pugh,* 420 U.S. 103, 111 (1975)). Certainly, where Nye did rely on the statements of Victim 1 – that is, with respect to the emotional distress brought on by the defendant's conduct – her reliance is clearly reasonable based on the information regarding the defendant's tweets and blogs.

In fact, to baldly state that Nye undertook no corroboratory investigation, in the face of clear descriptions of subpoenas to Twitter, Google and Hughes Network Systems, as described below, and review and inclusion of nearly 70 tweets, and additional blogs, to name but a few subject areas covered in the Nye affidavit, is misleading, incorrect, and frankly, offensive.

The fact is that Nye did corroborate much of Victim 1's and KPC members' information linking the tweets to the defendant when she subpoenaed Twitter for the IP address(es) associated with the numerous Twitter accounts that she learned had directed the tweets to Victim 1 and KPC, including the "vajragurl" and "aconlamho" accounts specifically referenced in the Nye affidavit.  Twitter informed her that all those accounts had been accessed from a single IP address.  When she learned that the IP address came back to Hughes Network System, she then subpoenaed that company and learned that the IP address was subscribed to by the defendant, with certain billing information related to that address connected to a "Jewel Annabella," the name of a known associate of the defendant.  The Nye affidavit also indicated that some of the Twitter accounts used by the defendant were "slight variations" of Victim 1's name, and she listed several of those accounts.

Nye did almost the identical corroboration for blogs alleged to have originated with the defendant, and again her subpoenas to Google connected the IP addresses associated with the blogs to the defendant.

Moreover, it was the amalgam of these tweets and blog entries that led Nye to conclude that "[these continual communications, particularly when viewed in the context of the history of [the defendant's] actions toward Victim 1 and KPC, have caused Victim 1 emotional

distress."  These are not merely conclusory observations of the case agent, but reasoned

determinations based on facts that conjoin to paint a particular picture.

It was from all of this evidence that Nye concluded, in a common sense approach,

the defendant had harassed Victim 1.  And this is precisely the type of circumstance in which

courts defer to the agent's expertise and experience. *See United States v. Dickey-Bey,* 393 F.3d

449, 453 (4th Cir. 2004).  It is of significant moment in this case that **three separate magistrates,**

each of whom was presented with the Nye Affidavit in support of probable cause, **all found**

**sufficient probable cause** to issue arrest and/or search warrants for evidence in this matter.

Accordingly, it is simply inaccurate to state that the affidavit lacked probable cause because it

consisted almost entirely of uncorroborated information and conclusory statements.

2.     *The Nye Affidavit Did Not Contain Material Omissions That Vitiated*
       *Probable Cause*

The defendant makes mere bald assertions that the Nye affidavit failed to include

"multiple requests by the defendant that KPC cease and desist their abuse" of him, presumably

through Twitter and that it failed to include statements that the defendant "had no intent to harm

KPC or Victim 1."  The defendant stated that Nye "misrepresented the contents of [the

defendant's] blog" in the Nye affidavit.  The defendant also summarily – and frankly, offensively

– again accused Nye of not "doing any investigation of her own" regarding the nearly 8000

tweets sent by the defendant.  The assertions are groundless and have no bearing on the probable

cause in the Nye affidavit.

The absence of any specific mention in the Nye affidavit of tweets that may have

involved "cease and desist" language is hardly significant, since the defendant does not explain

in what context they occurred, and in any event, it is difficult to understand what bearing such tweets would have on the existence of probable cause when the alleged harassing tweets *sent by the defendant* continued, apparently unabated, until nearly the arrest date.  Thus, even assuming there are tweets where the defendant requested KPC and/or Victim 1 to "cease and desist" in some behavior, the fact remains that the Nye affidavit shows the defendant continued to send harassing tweets until nearly the date of arrest.  In fact, the Nye affidavit set forth tweeting that occurred between May 30, 2010 and December 30, 2010.

Nye, whose information was reviewed by three separate magistrates in two separate districts, each of whom found probable cause, included in the Nye affidavit nearly 70 tweets from two separate accounts connected through Nye's investigation to the defendant, and concluded that harassment continued up until at least December 30, 2010.  Her conclusion, in a common sense fashion, was that the defendant had harassed Victim 1 through at least the end of December 2010.  Nothing about the defendant's own tweets to KPC to "cease and desist" vitiates probable cause as to Victim 1 or requires that the Nye affidavit be stricken as "false and misleading."  Not only was Nye not "expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Colkley,* 899 F.2d at 300, but her omission of the information in this instance was entirely appropriate.  Simply stated, "[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit." *Burnes,* 816 F.2d at 1358.

Accordingly, nothing provided by the defendant in any manner indicates that the information "would" have made a difference in the probable cause determination, or that Nye herself intentionally sought to mislead the magistrate.

Similarly, it is difficult to understand how the defendant's alleged comments that he intended no harm are material in any manner to a finding of probable cause.  The statutory language of §2261A(2)(A) clearly states that anyone with an "intent to ... harass ... uses any ... facility of interstate commerce to engage in a course of conduct that causes substantial emotional distress to that person ... [is guilty of a crime]."  Under this provision of the statute, there is no requirement that the defendant intend to harm the victim, only that he intend to harass the victim, or cause emotional distress.  In fact, the Fourth Circuit cogently noted the difference in connection with a North Carolina statute containing similar language: "the statute can be violated with either of two specific intents. It is violated if the defendant has 'the intent to cause death or bodily injury' to the victim or if the defendant has 'the intent to cause emotional distress ....'  *United States v. Seay,* 533 F.3d 732, 737 (4th Cir. 2009).[2]

Of course, the defendant's claim of no intent to harm is undercut significantly by tweets set forth in the Nye affidavit that, in the context of all the other tweets, blatantly threaten Victim 1 and KPC: "late at night at the edge o da farm, somethin creepin in the woods gonna do ya all harm...." or "I have a really special present for somebody who really, really deserves something special....Wait for it."  Nevertheless, tweets allegedly sent by the defendant that offered up some evidence of a lack of intent to harm do not undercut an intent to inflict

---

[2]      The North Carolina statute was worded as follows: "a person commits the offense of stalking if the person willfully on more than one occasion follows or is in the presence of another person without legal purpose and with the intent to cause death or bodily injury or with the intent to cause emotional distress by placing that person in reasonable fear of death or bodily injury."

emotional distress and thus cannot under the circumstances have tainted the probable cause of the

Nye affidavit.  In other words, whether there was one transmission of "cease and desist" tweets

by the defendant or 50, whether there was one transmission of "no intent to harm" tweets or 50,

the fact remains that there were transmissions by the defendant of harassing tweets and blogs that

cause Victim 1 emotional distress, giving rise to probable cause to arrest the defendant.

Moreover, both types of tweets the defendant claimed were not included in the

Nye affidavit – the "cease and desist" tweets and the "no intent to harm" tweets – are tweets that

the defendant appears to view as potentially exculpatory information.  It would appear the

defendant wants this court to graft a requirement that the affiant – and this court –  import the

rule of *Brady v. Maryland,* 373 U.S. 83 (1963), into the warrant application process.  Such efforts

have been squarely rejected.  *See Colkley,* 899 F.2d at 302 ("a requirement that all potentially

exculpatory evidence be included in an affidavit would severely disrupt the warrant process").

Finally, the gratuitous suggestions that Nye failed to do any investigation of her

own is baseless, is unsupported by the language of the Nye affidavit, and for the reasons noted

above in section (1), is incorrect.

      3.     *There Are No Grounds for a Franks Hearing*

      A.    The <u>*Franks* Standard</u>

*Franks v. Delaware* held that under limited and carefully circumscribed

circumstances, a defendant may challenge an affidavit offered to procure a search warrant against

the defendant. The Supreme Court articulated the right as follows:

> [W]here the defendant makes a substantial preliminary showing
> that a false statement knowingly and intentionally, or with reckless
> disregard for the truth, was included by the affiant in the warrant

13

> affidavit, and if the allegedly false statement is necessary to the
> finding of probable cause, the Fourth Amendment requires that a
> hearing be held at the defendant's request. In the event that at that
> hearing the allegation of perjury or reckless disregard is established
> by the defendant by a preponderance of the evidence, and, with the
> affidavit's false material set to one side, the affidavit's remaining
> content is insufficient to establish probable cause, the search
> warrant must be voided and the fruits of the search excluded to the
> same extent as if probable cause was lacking on the face of the
> affidavit.

*Franks,* 438 U.S. at 155-56.  The Court's holding rested on the principle that probable cause under

the Fourth Amendment must be demonstrated by a "truthful showing," *id.* at 165 (quotation

marks and emphasis omitted), but it pointed out immediately that a "truthful showing" must be

understood in the practical context of procuring warrants:

> This does not mean "truthful" in the sense that every fact recited in
> the warrant affidavit is necessarily correct, for probable cause may
> be founded upon hearsay and upon information received from
> informants, as well as upon information within the affiant's own
> knowledge that sometimes must be garnered hastily. But surely it is
> to be "truthful" in the sense that the information put forth is
> believed or appropriately accepted by the affiant as true.... Because
> it is the magistrate who must determine independently whether
> there is probable cause, it would be an unthinkable imposition
> upon his authority if a warrant affidavit, revealed after the fact to
> contain a deliberately or reckless[ly] false statement, were to stand
> beyond impeachment.

*Id.  See also United States v. Tate,* 524 F.3d 449, 454 (4th Cir. 2008).

The Court made clear that there was a "presumption of validity" with respect to

warrant affidavits and that to overcome that presumption, a defendant must allege "deliberate

falsehood" or "reckless disregard for the truth" and include with the allegations "an offer of

proof." *Id.* at 171, 98. The defendant must not only point out specifically the portion of the

affidavit that is claimed to be false and give reasons why it is false, but he must also furnish

"[a]ffidavits or sworn or otherwise reliable statements of witnesses" or explain their absence. *Id.* And, allegations of "negligence or innocent mistake are insufficient." *Id.*

Of course, assuming a defendant can prove intent, his pursuit of a *Franks* hearing will still flounder unless he can show the materiality of the omitted information. *United States v. Daniels,* 323 Fed. Appx. 201, 210 (4th Cir. 2009). To be material, an omission "must do more than potentially affect the probable cause determination: it must be 'necessary to the finding of probable cause.' " *Colkley,* 899 F.2d at 301 (quoting *Franks,* 438 U.S. at 156).

The burden of making the necessary showing is thus a heavy one to bear.

### B.   No *Franks* Hearing is Appropriate in This Case

While the defendant in this case makes allegations about omitted tweets and the lack of personal investigation by Nye, there is no corroborating evidence, such as "[a]ffidavits or sworn or otherwise reliable statements of witnesses"; in fact, the alleged contrary tweets are not even included. Instead, only the dates and alleged number of times are included. As stated above, allegations of "negligence or innocent mistake are insufficient." *Id.*[3]

Moreover, in this case, the defendant's principal argument appears to be that Nye *omitted* facts, thereby making the affidavit deceptive. When relying on an omission, rather than on a false affirmative statement, the defendant's burden increases yet more. *See United States v.*

---

[3]     While the government understands that most of the information relied upon by the defendant is from discovery provided by the United States, and to that extent, is not specifically disputed by the government, it is still necessary to adhere to the *Franks* requirement, if only to set forth a clear picture of the facts. For example, while the defendant claims there were cease and desist requests to KPC made by the defendant, he does not make clear that the last of those requests by the defendant was made before December 2010, and that in any event, the harassing tweets originating **from the defendant** continued even after his cease and desist requests stopped.

*Colkley,* 899 F.2d 297, 301 (4th Cir.1990).  As the Fourth Circuit explained in *Colkley,* an

affidavit offered to procure a warrant

> cannot be expected to include ... every piece of information
> gathered in the course of an investigation." And because every
> piece of information cannot be expected to be included, the very
> process of selecting facts to include for the demonstration of
> probable cause must also be a deliberate process of omitting pieces
> of information. Certainly, such intentional omissions do not satisfy
> the requirement of *Franks.*  As we stated in *Colkley,* "If, as the
> district court held, this type of 'intentional' omission is all that
> *Franks* requires, the *Franks* intent prerequisite would be satisfied
> in almost every case."

*Id.* at 300.  Accordingly, merely showing an intentional omission of a fact from a warrant

affidavit does not fulfill the *Franks'* requirements. *See id.* at 301; *see also United States v.*

*Shorter,* 328 F.3d 167, 170-71 (4th Cir.2003).

To satisfy the *Franks'* intentional or reckless falsity requirement for an *omission,*

the defendant must show that facts were omitted "with the intent to make, or in reckless

disregard of whether they thereby made, the affidavit misleading." *Colkley,* 899 F.2d at 300.

"[M]ere[ ] negligen[ce] in ... recording the facts relevant to a probable-cause determination" is

not enough. *Franks,* 438 U.S. at 170.  Stated otherwise, the omission must be "*designed to*

*mislead* " or must be made "in *reckless disregard of whether [it] would mislead.*" *Id.* at 301.

In this case, it is not clear what evidence the defendant believes shows that Nye

deliberately or with reckless disregard omitted certain information.  The defendant instead seems

to suggest a per se rule: Nye acted with reckless disregard simply by failing to include "any

assertion that she investigated the many threats" lodged against the defendant by Victim a and

KPC, by failing to include the defendant's "no intent to harm" tweets, by "misrepresenting the

contents" of the defendant's blogs, and by "failing to establish the credibility of her sources."

However, it is not clear why Nye had *any* obligation to investigate alleged threats made by

Victim 1 or KPC or to include any "no intent to harm" tweets, in the face of continued harassing

tweets and blogs issued by the defendant right up through December 2010.  Indeed, even if

somehow the information the defendant alleges Nye excluded should have been included,

"investigators are not obligated to engage in the most exhaustive investigation imaginable, nor

are they required to disclose all of the voluminous and possibly exculpatory information known

to them in a warrant application. '"[A] police officer's failure to pursue potential exculpatory

evidence [is] not in itself sufficient to negate probable cause.'" *Torchinsky v. Siwinski,* 942 F.2d

257, 264 (4th Cir.1991).  The defendant appears to suggest that the Nye affidavit is intentionally

false simply because it did not include the facts he believes should have been included, but there

is no evidence that Nye intentionally omitted such information or did so with reckless disregard.

Similarly, the defendant's claim that the Nye affidavit misrepresented the

defendant's blog fails to establish intent, because, *even if true,* the Nye affidavit included

numerous tweets and other that by themselves were sufficient to show probable cause. For the

reasons discussed above with respect to corroboration of sources, the defendant's motion fails to

establish intent to mislead or reckless disregard for the truth of the information.

Based on the arguments made above, the government submits that the omissions

claimed to have occurred in the Nye affidavit were irrelevant and would in no way have defeated

probable cause.  The defendant's motion, based on his tortured reading of the Nye affidavit,

potentially opens federal agents to endless conjecture about investigative leads, fragments of

information, or other matter that might, if included, have redounded to defendant's benefit. The

potential for endless rounds of *Franks* hearings to contest facially sufficient warrants is readily apparent. *Colkley,* 899 F.2d at 300.

However, even if a requirement to include the omitted information were somehow imposed on Nye, the defendant has made no showing that Nye had the requisite intent to mislead. The most that the record here reveals about Nye's failure to include the information about the defendant's tweets to "cease and desist" and that he "intended no harm" was that she did not believe it to be relevant to the probable cause determination. At the very worst, she was merely negligent in disclosing all relevant considerations to the magistrate. Her acts fell far short of the level of flagrant police action *Franks* is designed to prevent, and a hearing under that decision was not required.

Finally, even if somehow the omissions were intentional, the defendant fails to sustain the burden of obtaining a *Franks* hearing unless he shows the materiality of the omissions.  To be material under *Franks,* an omission "must be such that its inclusion in the affidavit would defeat probable cause." *Colkley,* 899 F.2d at 301.  Again, while the defendant – in his own conclusory fashion – states that the omitted information would have negated probable cause if included, there is no evidence that it would have, short of the defendant's own conclusions.  Indeed, there can hardly be any such evidence given the sufficiency of other facts and the state of the law, as discussed above in the section addressing probable cause.

        4.    *There is No Basis to Suppress the Evidence Obtained from the Arrest and Searches of the Defendant's Residence*

The basis for the defendant's Motion to Suppress tangible evidence is the absence of probable cause in the Nye affidavit, since the facts in the Nye affidavit were the underpinning

for the probable cause findings of both Magistrates Bristow (Central District of California) and Connelly (District of Maryland), in support of the search of the defendant's residence in California and his computers in Maryland.  Of course, the Rings affidavit not only included the Nye affidavit information, but also included additional information touching upon the defendant's relationship to the subject residence, as developed by Rings, including information that the defendant had personally placed a call to the police involving a suspected trespass, and that license and website information connected the defendant, as well as an individual named Jewel Annabella, to the residence.  Thus, the search authorized by Judge Bristow was not limited exclusively to the probable cause in the Nye affidavit, but included additional information that supported the probable cause set out in the Nye affidavit.

The second Nye affidavit not only incorporated the facts of the Nye affidavit, but added information related to third party information that the defendant had used an e-mail account of that third party – that is, Jewel Annabella -- without her consent.  Of course, that information too was consistent with information originally provided in the Nye affidavit.[4]

Since the government submits that the Nye affidavit contained sufficient probable cause to believe that the defendant had committed a crime and that evidence of that crime was likely present in his residence and on his computers, the issue that these seizures are the product of unlawful searches is moot, and the suppression of tangible evidence found during the search of the residence and computers is therefore unwarranted.   The government thus submits that the

---

[4]        Among other things, the Nye affidavit contained information that one of the IP addresses used by the defendant was subscribed to "Jewel Annabella."  *See* para. 15 of Nye affidavit.

facts in the Nye affidavit, as well as other facts included in the search affidavits, contained

sufficient probable cause.  Accordingly, the Motion to Suppress should be denied.

>    5.    *The Statute in Question, 18 U.S.C. §2261A(2)(A), Passes*
>          *Constitutional Muster and Does Not Violate the First Amendment*

The defendant also seeks to dismiss the Indictment in this case, asserting that his

conduct in this case is protected by the First Amendment.  The Indictment in this case charges

"cyberstalking" in that the Defendant

>    1.  with the intent to harass and to cause substantial emotional distress to a
>    person in another State;
>
>    2.  used any interactive computer service[1], or any facility of interstate
>    commerce;
>
>    3.  to engage in a course of conduct;
>
>    4.  that caused substantial emotional distress to that person.

18 U.S.C. 2261A(2)(A).

The defendant argues that 18 U.S.C. 2261A, insofar as it charges a crime based on

his conduct in this case, is unconstitutional as applied to him and is also facially overbroad and

vague.  Without conceding the constitutionality of other provisions of the statute, the defendant

limits his challenge to the specific provisions charged in this instance.  However, the defendant's

argument misconceives the purpose of 2261A.   The statute has a plainly legitimate sweep which

criminalizes the use of interstate facilities to engage in a course of conduct intended to torment

---

[1]      The term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions. 47 U.S.C. § 230; *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997).  Twitter and web hosting services are interactive computer services.

people to the point that the victim suffers substantial emotional distress.  Such conduct is not

protected speech. There is no constitutionally protected right to harass or intimidate, and the First

Amendment provides no shelter for such conduct.  *See U.S. v. Lee,* 935 F.2d 952 (8th Cir. 1991).

As stated in the Nye affidavit in support of the arrest warrant, the Defendant in

this case engaged in a continual course of conduct intended to threaten and intimidate Victim 1

and KPC.  The defendant sent over 8000 tweets over the course of many months that directly

referenced Victim 1 by name or alias.  The following is a small sample of the defendant's

invective:

> Sunday, June 4, 2010 "[Victim 1]: somebody throw a couple shots of gin in the bitch & get her back on twitter: shes fun 2 play with."
>
> Monday, July 5, 2010 "and that sound that keeps buzzing in the back of your head [Victim 1] is my hand touching the ground."
>
> Tuesday, June 22, 2010 "want it to all be over soon sweetie?"
>
> Friday, June 25, 2010 "[Victim 1] you are a liar & a fraud & you corrupt Buddhism by your very presence: go kill yourself".
>
> Wednesday July 14, 2010 "ho bitch [Victim 1] so ugly that when she was born the doctor slapped her mother #hobitch [Victim 1]
>
> Sunday, December 5, 2010 "I do not believe [Victim 1] was a prostitute.  I think that story is made-up lie.  Prostitutes are professionals."
>
> Sunday December 5, 2010 "Can reputed ex-prostitute [Victim 1] weather the storm she has created for herself by obsessive online bullying & cyberstalking?"
>
> Sunday, December 5, 2010 "Watch [Victim 1] and KPC decompose"
>
> Thursday December 9, 2010 "Terrors in the night disturb Fat [Victim 1]'s sleep: she cannot sleep with taking something, and anxiety rules her body like a slavemaster."

The numerous examples of repeated threats, some explicit and some implied in the context of KPC's Buddhist practice, demonstrate that the defendant's plain intention was to harass Victim 1 and KPC, and in any event was sufficient probable cause to arrest. Many of the tweets and blog postings identify Victim 1 by name and were intended to cause substantial emotional distress to Victim 1, especially in light of the prior relationship between the parties and the defendant's criminal history. As related in the Nye affidavit, the consequences of this campaign of harassment and intimidation forced Victim 1 not to leave her home in a year and a half except for appointments with her psychiatrist. Victim 1 remains fearful to leave her residence for fear that the defendant or someone hired by the defendant may kill her. Victim 1 has also on occasion hired armed security guards to protect her residence for fear of her life. Victim 1 has also experienced numerous physical ailments from the defendant's harassment.

The constitutionality of a statute may be challenged on grounds that the statute is overly broad in scope such that it conceivably applies to a substantial amount of speech or conduct protected under the First Amendment. However, "application of the overbreadth doctrine is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. * * * Equally important, overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). It is not enough that a statute might conceivably apply to some protected speech. *New York v. Ferber*, 458 U.S. 747 (1982). Rather, where conduct and not merely speech is involved, the

overbreadth of a statute "must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, id. at 615.

In addition, "vagueness may invalidate a criminal statute if it either (1) fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or (2) authorizes or encourages arbitrary and discriminatory enforcement." *United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004).

A.   Section 2261A(2)(A) Legitimately Criminalizes Conduct, Is Not Overbroad, And Does Not Apply Substantially to Speech Protected by the First Amendment.

Section 2261A(2)(A) is a valid exercise of Congressional power to criminalize cyberstalking using an "interactive computer service." The statute is narrowly drawn to specific, criminally responsible intent and imposes a high standard that the conduct must result in substantial emotional distress. By its terms, the statute precludes application to substantially all speech except where the intent and purpose of the actor is to harass, intimidate, and threaten. Therefore, the sweep of 2261A(2)(A) is plainly legitimate and neither imposes a real or substantial risk to protected speech. *Broadrick, supra.* Accordingly, 2261A(2)(A) is not overbroad in its scope.

The defendant's constitutional attacks on 2261A(2)(A) are not supported in the law. In *U.S. v. Schrader*, 2010 WL 2179572 (SD W. Va. 2010) (unreported magistrate opinion), the defendant moved to dismiss the indictment charging him under the substantial emotional distress provisions of 2261A, raising both overbreadth and vagueness challenges to the statute. As in the present case, the defendant in *Schrader* also "hypothesi[zed] that a person's communications containing political or religious views having First Amendment protection with persons with

opposing views might become the basis for charges under 2261A(2)."  In the present case, the

defendant goes farther and claims that 2261A(2)(A) could conceivably cover blog postings

harshly critical of politicians, or book criticisms on Amazon, or student ratings of professors on

ratemyprofessor.com, if any of the same should cause someone substantial emotional distress.[2]

The defendant's emphasis on his speech – and legal standards by which regulation of speech is

judged -- is misplaced because the statute reaches conduct, not speech.  The current Indictment

charges the defendant with criminal *conduct* because it charges that the defendant with the intent

to harass and to intimidate, by use of an interactive computer service, caused substantial

emotional distress to the victim in this case.  Intimidation and harassment, even through speech,

can be prohibited by criminal statutes.  *U.S. v. Hicks*, 980 F.2d 963 (5th Cir. 1992) (profane

speech used to intimidate airline crew in the performance of their duties not protected

expression)

Similarly, the court in *United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004),

concluded that § 2261A was constitutional.  The *Bowker* case addressed an earlier version of

§ 2261A which did not criminalize using an interactive computer service with the intent to harass

or to cause substantial emotional distress.  These additional bases were added to § 2261A as part

of the 2006 amendments to the Violence Against Women Act.  Nevertheless, *Bowker's* analysis

of the relevant portions of 2261A amply demonstrates that the current text of § 2261A does not

unconstitutionally chill free speech and is narrowly drawn to address criminal conduct only.

---

[2]     Remarkably, the defendant goes so far is to place his conduct in a similar position as protestors in the so-called "Arab Spring" and posits an inflated and unsubstantiated role for "social media" in those events.

In *Bowker*, the defendant was charged with cyberstalking after sending a number of emails relating to a female reporter to a general email account for most employees at WKBN TV in Youngstown, Ohio. The emails were not sent to the victim, but later shown to her, which caused her to be stunned and frightened.  The victim subsequently began receiving hand-written notes from the defendant in which the defendant professed his affection for the victim.  The defendant's communications to the victim's family members and work colleagues eventually began to assail the victim, which caused her to be afraid to leave her house every day and fear that the defendant might attempt to rape her.  The court rejected the defendant's overbreadth challenge, noting that a law that prohibited intentionally using the Internet in a course of conduct that places a person in reasonable fear of death or serious bodily injury did not have a substantial sweep of constitutionally protected conduct. *Bowker, id. at 380.*  The defendant in *Bowker* knew that his emails would reach his victim, even though they were not sent directly to her.  Similarly, it is obvious that the defendant in this case knew that his tweets and blog postings would reach Victim 1.  Indeed, some of them use of them use a "second person" construct and are plainly intended to be direct communications (see the tweets identified on page 21 of the Government's Opposition).

The 2006 amendments added to the coverage of § 2261A language dealing with harassment and substantial emotional distress.  Neither addition renders the statute unconstitutionally overbroad.  First, contrary to the defendant's assertion, a number of courts have construed "intent to harass" in analogous statutes.  For example, in *U.S. v. Tobin*, 480 F.3[rd] 53 (1st Cir. 2007), the First Circuit examined the element of "intent to harass" in the telephone harassment statute, 47 U.S.C. §223(a)(1)(D), and noted that it required proof of "acting with a

25

specific purpose to cause emotional upset."  The *Tobin* court's interpretation of the similar

"intent to harass" element supports the conclusion that the cyberstalking statute's "intent to

harass" applies to conduct, and not speech, based on proof that a defendant acted with a "specific

purpose" to cause an adverse emotional reaction in the victim.  *See also U.S. v. Infante*, 2010 WL

1268140 (D. Ariz.).

　　　　　The new element of causing substantial emotional distress similarly does not

render the statute overbroad.  Indeed, the *Tobin* court defined intent to harass in terms of

intending to cause emotional upset.  Moreover, the element of the crime is causing *substantial*

emotional distress which sets a standard higher than mere emotional upset.  *See U.S. v. Shrader*,

716 F. Supp. 2d 464 (SD W. Va. 2010) (noting that requiring medical records for proof of

substantial emotional distress is an unnecessary requirement given that the text of the statute

already sets a standard – substantial – for the emotional distress of a victim);  *see also United*

*States v. Jordan*, 591 F. Supp. 2d 686 (SD N.Y. 2008) (approving  jury instructions requiring

proof that the defendant acted with the specific intent to engage in a course of conduct to cause

substantial emotional distress to the victim).

Finally, the fact that a statute may be unconstitutional in certain instances does not

warrant facial invalidation.  *Bowker*, *id.* at 380; *Parker v. Levy*, 417 U.S. 733 (facial invalidation

not appropriate when the remainder of the statute "covers a whole range of easily identifiable and

constitutionally proscribable conduct").  The *Bowker* court noted specifically that in the

analogous telephone harassment context, some applications of the statute that may be

unconstitutional as applied is not a reason to strike down the statute as facially invalid.  *Bowker*,

*id*. (anonymous telephone calls to a public official with the intent to annoy him or her about a

political issue may be permitted. *United States v. Popa*, 187 F. 3d 672 (D.C. Cir. 1999) (telephone harassment statute was unconstitutional as applied to defendant who placed seven anonymous calls to a U.S. Attorney to complain about defendant's treatment by the police and the prosecutor). In this case, the Indictment charges that the defendant's conduct was predominantly, if not exclusively, for the purpose of invading his victim's privacy and communicating with her with the express intent to harass or cause substantial emotional distress.

Furthermore, the defendant's claims mistakenly graft additional requirements to the statute not contemplated by its terms. There is no requirement that there be direct contact with a victim, or actual interstate travel, in order to save the constitutionality of 2261A. What one may not do directly, one may not do indirectly. *See Bowker* (defendant's communications initially were not sent to victim, but to a common email inbox); *United States v. Jordan*, *supra* (evidence at trial under 2261A, *including false internet postings offering sex and housing at victim's telephone number* as well as threats to "beat up" an acquaintance, amply supported inference that Jordan acted with intent to cause victim substantial emotional distress and reasonable fear of harm).

It is of no constitutional moment that the defendant used Twitter and blogs, rather than the telephone or other means, with the intent to harass which causes substantial emotional distress to the victim. The abuse of a new medium doe not, by itself, mean that the defendant's conduct is not covered by 2261A; the law must be flexible and consonant with technological advances which often provide novel avenues for familiar crimes. Indisputably, the sheer quantum of the defendant's messages, through Twitter or web postings, plainly demonstrate an intent to communicate with the victim and others who know her. The defendant's conduct was

calculated to barrage the victim with messages and repeated and unmistakable references to her all done, as the grand jury found, with the specific intent of harassing the victim and causing her substantial emotional distress.

Furthermore, the victim could not simply turn off the defendant's thousands of messages, which were in many instances directed to her and others in her community.  Through various aliases, and further efforts to undermine efforts made by the victim to avoid the harassment campaign, the defendant was assured that his harassment would succeed.  The sheer number of tweets and posts which assaulted  the peace of the victim, many of which show that the defendant knew his campaign was having the desired effect, demonstrate that political and theological debate was not the purpose of the defendant's actions.

The defendant claims that the statute on its face covers speech that criticizes a political figure, a book, or a professor.  These arguments are misplaced.  First, political speech is not captured by the statute's requirement of an intent to harass, intimidate, or threaten, even if that speech may cause "emotional upset."  Second, legitimate commentary and criticism spring from an entirely different motive and intent that the statute's prohibition on an intent to harass, intimidate, or threaten.  Third, even scathing, rude and angry commentary does not intend or inflict *substantial* emotional distress, certainly not the substantial interference with Victim 1's daily life as occurred in this case.  The requirement that the emotional distress be substantial separates the ordinary speech characteristic of the "marketplace of ideas" from the damaging conduct properly prohibited by section 2261A.

B.    <u>Section 2261A(2)(A) Is Not Unconstitutionally Vague.</u>

Vagueness may invalidate a criminal statue if it either (1) fails to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits, or (2) authorizes or encourages arbitrary and discriminatory enforcement.  *Bowker*, *id*. at 380.  In this case, the meanings of "intent to harass" or to "cause substantial emotional distress" pose no risk of misunderstanding what the statute prohibits.  The defendant in *Bowker* presented similar arguments on vagueness that were roundly rejected by the Sixth Circuit.

First, the court concluded that the stalking and telephone harassment statutes charged in that case "provide sufficient notice of their respective prohibition because citizens need not guess what terms such as 'harass' and 'intimidate' mean."  *Bowker*, *id.*  Rejecting the defendant's contention, the court concluded that the meanings of the words "harass" or "intimidate" did not render the telephone harassment statute void for vagueness, noting that the meaning of these words "can be ascertained fairly by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning." *Bowker*, *id*. at 381; *see also United States v. Stewart*, 207 F.3d 658, 2000 WL 122427 (5th Cir. 2000) (unpublished opinion, Dennis, J. concurring) ("harass" as used in 2261A "means to place that person in reasonable fear of death or serious bodily harm to himself or to a member of his immediate family" and concluding that the statute is neither overly broad nor vague).  Furthermore, the federal cyberstalking statute imposes a concrete harm requirement of substantial emotional distress which further serves to avoid  arbitrary and discriminatory enforcement. *Compare Church of the Am. Knights of the Klux Klan v. City of Erie*, 99 F. Supp.

2d 583 (W.D. Pa. 2000) (noting that a harassment or intimidation ordinance which did not require any particular reaction in the audience was unconstitutionally vague).

The defendant in *Schrader* also argued that because 2261A(2) does not specifically identify the kind of speech it criminalizes, any speech which a person claims has caused substantial emotional distress or fear of serious bodily injury or death may be the basis of charges under 2261A(2).  In rejecting the defendant's claims, the court in *Schrader* noted that the statute applied only to specific unlawful purposes and noted that the statute was "very precise" in describing the prohibited conduct:

> Title 18 U.S.A., § 2266(2), states that
>
> [t]he term "course of conduct" means a pattern of conduct composed of two or more acts. Evidencing a continuity of purpose."  The statute criminalizes two forms of *conduct* – (1) traveling in and (2) using facilities of interstate commerce to engage in a course of conduct intending to kill, injure or harass another person, or place another person under surveillance with those intentions or to cause another person substantial emotional distress or reasonable fear of death or serious bodily injury to that person or that person's family.

The court emphasized that the statute applies only to communications that indicate specific unlawful purposes. In rejecting the defendant's challenge, the court noted that §2261A(2) does not criminalize a substantial amount of protected expressive activity.

Similarly, the statute's element of "substantial emotional distress" is equally subject to fair notice to the public of the prohibited conduct.  Substantial emotional distress is no more vague than "harass" and also possesses a common and generally accepted meaning.  *See Shrader*, *supra.*

As noted by the magistrate judge in *Shrader*,

30

> It can hardly be said that section 2261A(2) is unconstitutionally vague.  While the statute contains no definition of any of the words respecting the requisite intentions or purposes which must be proven such as to harass or intimidate, it specifically requires that defendants engage in a course of conduct through interstate facilities with the intention or purpose of harassing or intimidating. This language is sufficiently specific to put a person of reasonable intelligence on notice of the proscribed conduct.

*Shrader*, *id* at 7, *citing Screws v. United States*, 325 U.S. 91 (1945).

Indeed, the statute's requirements of an intent to harass or intimidate which causes *substantial* emotional distress safeguards the examples of arguably innocuous conduct from prosecution under 2261A.  Requiring substantial emotional distress as a result of a defendant's intentional harassment or intimidation removes any specter of vagueness from the language of the statute.[3]

Accordingly, § 2261A is a constitutional exercise of Congressional power, and the defendant's motion to dismiss on these grounds should be denied.

## **CONCLUSION**

On the basis of the foregoing, the government submits that the defendant's Motions to Dismiss, to Suppress the Arrest and Tangible Evidence and for a *Franks* hearing should summarily be denied.

---

[3]     The defendant's's conduct, as summarized in the Nye affidavit clearly falls within the prohibitions of the statute, and therefore, 2261A is constitutional as applied to him.  *U.S. v. Popa*, *supra* (statute, as applied, was unconstitutional because the evidence indicated that the defendant intended to engage in political discourse directed to then U.S. Attorney Eric Holder; complaints about the actions of a government official were a significant component of defendant's calls).  All of the evidence adduced by the government establishes not an intent to engage in a discussion on theology, or even polemics, but an intent to hound Victim 1 without respite.

Respectfully submitted,

Rod J. Rosen stein
United States Attorney


_____

David I. Salem
Assistant United States Attorney
Anthony V. Teelucksingh
Special Assistant United States Attorney
400 U.S. Courthouse
6500 Cherrywood Lane
Greenbelt, Maryland 20770
(301) 344-4433

**Certificate of Service**

I hereby certify that a copy of the foregoing Opposition Motion was filed ECF

with copies to counsel of record: Ebise Bayisa, Esq., and Lauren Case, Esq., Office of the Federal

Public Defender, 6411 Ivy Lane, Suite 710, Greenbelt, MD 20770.


_____

David I. Salem