IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA     *

v.     *     Crim. No. RWT-11-0091

WILLIAM LAWRENCE CASSIDY     *

DEFENDANT'S CONSOLIDATED REPLY TO GOVERNMENT'S
OPPOSITION TO DEFENDANT'S PRE-TRIAL MOTIONS

Mr. William Cassidy, through counsel, hereby files this reply to the Government's opposition to his pre-trial motions.

INTRODUCTION

This case involves a staggering amount of factual and legal inaccuracies. The Court need not decide whether the misrepresentations in this case were deliberate or were merely the result of inattention to the actual facts and applicable law, both of which are easily ascertainable. No matter the reason for the inaccuracies, this Court should not permit this case to proceed to trial for several reasons.

First, Mr. Cassidy meets that standard for a hearing pursuant to Franks v. Delaware, 483 U.S. 154 (1978). There can be no credible contention that the affidavit presented to Judge Day included a truthful rendition of the facts of this case. Rather, it presented a story of a one-sided barrage of tweets and blog posts. This version was far from the case. Agent Nye omitted any facts about the barrage of speech (greater in number and more menacing than that which is set forth in the affidavit) from Ms. Zeoli and her followers directed at Mr. Cassidy or anyone who

disagreed online with Ms. Zeoli. Agent Nye also failed to include that Mr. Cassidy had contacted law enforcement officials to report the pattern of cyberstalking and harassment undertaken by Ms. Zeoli and her followers. Numerous additional facts are set forth below which were material to a probable cause finding were omitted. The Government's argument that Mr. Cassidy has failed to meet the standard for a Franks hearing is not supported by the facts or the law. Second, even without the omissions, the affidavit sworn out by Agent Nye does not contain probable cause to believe a criminal offense has occurred under well-established Fourth Amendment principles.

Third, the portion of § 2261(A)(2)(A) violates both the First and the Fifth Amendment. The Government's arguments that this prosecution may constitutionally proceed are unsupported by the Supreme Court's First Amendment jurisprudence.

Before turning to the constitutional issues mentioned above, the Government's failure to respond to two particular motions merits brief mention.

I. THE GOVERNMENT'S FAILURE TO RESPOND TO MR. CASSIDY'S MOTION FOR A BILL OF PARTICULARS AND HIS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM CONSTITUTE WAIVER TO ANY OPPOSITION TO THESE MOTIONS.

Faced with an Indictment that did not inform Mr. Cassidy of the speech upon which the Government's prosecution was based (nor did it specify what the alleged "substantial emotional distress" was) Mr. Cassidy, on June 2, 2011, filed a Motion for a Bill of Particulars. This Motion was accompanied by a memorandum which

set forth why the Government's Indictment violated, not only well-settled charging practices, but his Fifth Amendment right to be put on notice of the charges pending against him. The Government has failed to file a response to this motion.

On July 22, 2011, Mr. Cassidy filed a Motion to Dismiss the Indictment, both on constitutional grounds and on the separate non-constitutional ground that the Indictment simply failed to state an offense. In its opposition memorandum, the Government did not respond to Mr. Cassidy's Motion to Dismiss for Failure to State an Offense.

Any argument in opposition to either of these Motions is now waived. Fed. R. Crim. P. Rule 12(e), 45, Local Rule 105.

II. THE OMISSIONS FROM THE AFFIDAVIT REGARDING MS. ZEOLI'S AND KPC'S PATTERN OF CYBERSTALKING AND HARASSMENT VITIATE PROBABLE CAUSE.

This affidavit fails to include numerous facts, that if included, would have eliminated a finding of probable case. First, the affidavit fails to mention that Mr. Cassidy repeatedly reached out to law enforcement authorities in an effort to seek protection from KPC's on-line harassment of him. Rather than investigating or including these facts, that would have negated a finding of probable cause, the affidavit simply ignores these facts that would have given the magistrate an accurate depiction of the all of the facts in this case.

> A. The Affidavit Mischaracterizes the Purpose of the Temporary Restraining Order Sought by a Former KPC Member

The affidavit misrepresents Mr. Cassidy's involvement with a temporary restraining order brought against Ms. Zeoli in 2009, as it is described in Agent Nye's affidavit. In paragraph 27 of the affidavit Agent Nye claims that:

> As part of the campaign of harassment [Jewel] Nydia Alexandra sought a temporary restraining order on [sic] Victim 1. As a result, Victim 1 hired a lawyer and traveled to California to defend herself. CASSIDY did not appear in court but was named on the document. . . .

It does not appear that Agent Nye undertook any effort to ascertain why Mr. Cassidy and Ms. Alexandra might seek a restraining order against Ms. Zeoli and her followers, other than to characterize this as an attempt to harass Ms. Zeoli. If Agent Nye did investigate the circumstances surrounding this restraining order, she did not include any information gained from her investigation in the affidavit. If she had investigated the temporary restraining order and the reason for its request, she would have discovered that Mr. Cassidy reached out to law enforcement officials regarding KPC's harassment of him and Ms. Jewel.[1] However, law enforcement responded to Mr. Cassidy's plea for law enforcement intervention by responding that harassment is not a crime and that Cassidy should instead seek a civil remedy.

In fact, had Agent Nye conducted any independent investigation in this case,

---

[1] For example, members of KPC created a Twitter account called DEADMary, with an icon of a grotesque corpse and posted numerous tweets purporting to be from Mr. Cassidy's dead mother, whose name was Mary.

4

she would have found out that KPC and Ms. Zeoli have engaged in a pattern of harassment and intimidation of those who criticize Ms. Zeoli.  See e.g., http://diamondsutrazen.blogspot.com/2011/06/crimes-and-tulkus.html (discussing FBI raid on an individual's home who had been the victim of KPC's cyberstalking and harassing).  Moreover, the defense has information that others who have become acquainted with Ms. Zeoli on line have been similarly harassed for their criticism of her.

      B.    The Affidavit Misrepresents Both What Twitter Is and the Context of Mr. Cassidy's Tweets.

The government's argument in its opposition is that Agent Nye was not required to include specific facts regarding Twitter and the content of Mr. Cassidy's other tweets because these facts are not relevant to a finding of probable cause. While it is true that an affidavit does not need to include "every piece of information gathered in the course of an investigation," it is equally true that a law enforcement officer may not simply ignore half of the story and leave out facts that vitiate probable case when drafting an affidavit in support of a warrant.  This is the precisely the harm that Franks was intended to prevent.

The Government fails to refute Mr. Cassidy's assertion that Agent Nye fundamentally misrepresented the nature of Twitter, as well as failed to corroborate information received from KPC.  The Government also suggests Mr. Cassidy alleges that "Nye undertook no corroboratory investigation" and that Mr. Cassidy does this despite the subpoenas to Twitter, Google, and Hughes network systems.  Mr.

Cassidy did not, in fact, deny that those subpoenas were issued and that Nye corroborated the origin of tweets from the accounts and origin of the blog posts. This evinces a misunderstanding of Mr. Cassidy's arguments.  That Agent Nyw obtained subpoena's does little to advance the probable cause determination.

A thorough description of Twitter, including its public nature appears in Defendant's Motion requesting a hearing pursuant to Franks v. Delaware at 5-7, and would be needlessly repetitive here.  Rather, Mr Cassidy simply reiterates that the complete lack of inclusion of Ms. Zeoli's and her followers' cyber-speech fails to portray an accurate picture of the res gestae of the offense.

Mr. Cassidy does not allege that Agent Nye did not view the 71 tweets and four blog posts included in the affidavit, as suggested by the Government, Government's Opposition at 5; rather, Mr. Cassidy argues that merely reading a list of tweets supplied by KPC does not constitute corroboration or independent investigation, and it is unclear from the affidavit how Agent Nye obtained those tweets.  Contrary to the Government's own bald assertion, it is not "abundantly clear" that Agent Nye reviewed all 8,000 alleged tweets herself.

 In fact, in its discovery, the Government only made available less than one quarter of those alleged tweets, with no indication of when or how even that small portion was obtained.  As Mr. Cassidy argued in his motion for a Franks hearing, either Agent Nye did not in fact read all of the alleged 8,000 tweets, or she did read them and chose to omit the various tweets from Mr. Cassidy where he asks KPC to cease and desist their harassment, the tweets confirming that Cassidy intended no

6

harm, and the re-tweets by Cassidy during that time period of threats made against him by Ms. Zeoli and KPC members. In any case, such behavior evinces a reckless disregard for the truth.

The Government makes no attempt to refute Mr. Cassidy's arguments about the reckless disregard for the truth evidenced in Agent Nye's description and characterizations of both Mr. Cassidy's blog and various KPC member blogs. Again, as set out more fully on pages 23 and 24 of Mr. Cassidy's Franks motion Agent Nye either only read a portion of each blog provided to her by KPC, or she viewed the entirety of both and recklessly omitted facts that would have directly impacted a finding of probable cause.

The government's assertion that Agent Nye was not required to include facts in the affidavit regarding the frequent use of Twitter by both Mr. Cassidy and Ms. Zeoli is unpersuasive. Inclusion of these facts would have negated a finding of probable cause and should have been included in order to give the Court an accurate depiction of the events. Nor did Agent Nye investigate why Mr. Cassidy and others were forced to change their Twitter usernames so frequently. Had Agent Nye done even a minimal amount of independent investigation, she would have learned that Ms. Zeoli and her followers contacted anyone who either to deigned to disagree with her and/or expressed an interest in Mr. Cassidy's beliefs. They would then try to prevent these people from following Mr. Cassidy on Twitter. Defense has been learned that this harassment by Ms. Zeoli and her KPC followers led at least some people to leave Twitter altogether.

Similarly, the government's statement that it "is difficult to understand how the defendant's alleged comments that he intended no harm are material in any manner to a finding of probable cause" defies logic. The fact that Mr. Cassidy has repeatedly and explicitly stated numerous times that he means no harm colors the rest of the tweets he posted. Rather than pulling out selected tweets for purposes of the affidavit, Mr. Cassidy's alleged 8,000 tweets, to the extent they exist, should be read as a whole to determine whether in fact probable cause existed. His tweets to the contrary were not included, and if they had been, would have vitiated finding of probable case.

    C    Agent Nye's Omissions Were Material to a Finding of Probable Cause.

These omissions were made with a reckless disregard for the truth, the standard required under Franks v. Delaware. It is clear that the omitted facts, if included, would have painted a very different picture of Mr. Cassidy's intent and the nature of his tweets regarding Ms. Zeoli. Thus, it is not sufficient for the government to simply state that Agent Nye's affidavit includes tweets that are, on their own sufficient for probable cause

The Court in United States v. Colkley , 899 F.2d 297 (4th Cir. 1990), made it clear that an investigating officer is not required to include every piece of information obtained during investigation when applying for a warrant. This uncontroversial observation does not carry the day for the government; the problem with the affidavit in the instant case is that it only paints half the picture of the

8

facts. There can be no credible contention that the omitted facts would not have influenced Judge Day's probable cause determination.

      D.      The Government's Claim That Three Different Magistrates Ruled on the Issue of Probable Cause is Inaccurate.

The Government contends that "it is of significant moment in this case that three separate magistrates, each of whom was presented with the Nye affidavit in support of probable cause, all found sufficient probable cause to issue arrest and/or search warrants." Government's Opposition at 10. This is factually inaccurate. One magistrate ruled on the issue of probable cause to arrest, based on an affidavit that contained material omissions. The other two magistrates who signed warrants related to the matter did so on the basis of an arrest they had reason to believe was proper.

The Government is correct that it is "of significant moment" that three separate magistrates issued warrants relating to this case, because the resulting searches were the fruit of the original arrest, both in their contents and in their magisterial approval. The Government agrees with this point, as it does not allege any other basis for the subsequent warrants, such as inevitable discovery, independent source, or good faith.

III.      THE AFFIDAVIT WAS NOT SUPPORTED BY PROBABLE CAUSE TO BELIEVE A CRIMINAL OFFENSE OCCURRED.

Even without the omissions, the affidavit is simply devoid of probable cause to believe a criminal offense occurred. It is beyond dispute that an affidavit must be based on probable cause, which is defined as "facts and circumstances sufficient to

warrant a prudent man in believing that the [suspect] has committed or was committing an offense." Gerstien v. Pugh,, 420 U.S. 103, 11 (1975).

At most, the affidavit in the instant case, supported by conclusory allegations and uncorroborated information, shows that Mr. Cassidy engaged in juvenile and annoying behavior when he posted his tweets about Ms. Zeoli. This was not a case where Mr. Cassidy tried to specifically engage Ms. Zeoli in one-to-one contact for the purpose of harassing her. What the affidavit makes clear is that Mr. Cassidy was not speaking solely to Ms. Zeoli; he was speaking about her on a public forum (just as she was doing with him). Under well-settled First Amendment law, as set forth in more detail below, this behavior cannot be a crime and cannot sustain a finding of probable cause.

  IV.  THE PORTION OF § 2261A(2)(A) CHARGED VIOLATES THE FIRST AMENDMENT AND THE FIFTH AMENDMENT.

Under well-established law, the portion of § 2261A(2)(A) charged in this case cannot be reconciled with the Constitution. The Government's duty to enforce statutes applies, of course, only to constitutional statutes. When statutes are unconstitutional or of dubious constitutional validity, the Government has no obligation to enforce such a statute.[2] See, e.g., Dept. of Justice Press Release refusing to defend the Defense of Marriage Act on the ground that it was

---

[2] Of course, even when statutes are on firm constitutional ground, the Government has the obligation to investigate allegations by both citizens and law enforcement to ensure that justice is truly being carried out and that they are not involved in carrying out one person's vendetta against another.

10

unconstitutional, Feb. 23, 2011, http://www.justice.gov/opa/pr/2011/February/11-ag-222.html, Dickerson v. United States, 530 U.S. 428 (2000)(appointing counsel to argue the Government's position because Department of Justice refused to adopt Court of Appeals' constitutional interpretation of 18 U.S.C. § 3501).  As demonstrated below, the portion of §2261A(2)(A) invoked by the Government in this case violates both the First Amendment and the Fifth Amendment, both on its face and as applied to this case.  The Government's arguments to the contrary are without merit.  Accordingly, the Court should grant Mr. Cassidy's Motion to Dismiss.

> A. The Government Ignores the Supreme Court's First Amendment and Fifth Amendment Jurisprudence.

The Government's arguments as to why the portion of § 2261A(2)(A) charged is constitutional need not detain the Court long.  In its opposition memorandum, the Government completely fails to address the applicable Supreme Court jurisprudence set forth in both Mr. Cassidy and amicus' memoranda.[3]

The Government does not contest – nor could it – Ms. Zeoli's status as a public figure.[4]  Having no support for its position in the Supreme Court's

---

[3] While an amicus curiae filing is relatively rare in district court, rarer still is the Government's failure to acknowledge even the existence of amicus. Moreover, the Government's decision to bring a prosecution under an untested portion of the statute, then not even attempt to address the applicable legal doctrines is beyond baffling.

[4] The Government's argument proceeds on the premise that Mr. Cassidy sent approximately 8,000 tweets "pertaining to [Ms. Zeoli] and KPC."  Govt's Opp. Memo at 2.  As noted above, despite the fact that Mr. Cassidy entered into a discovery

jurisprudence relied upon by Mr. Cassidy and amicus, the Government's opposition relies on either outdated authority[5], cases involving portions of §2261A(2)(A) not involved in this case, or cases interpreting the telephone harassment statute.[6] This authority does not support the Government's contention that the portions of the statute charged herein are constitutional, either facially or as applied.

For example, the Government relies heavily on United States v. Bowker, 372 F.3d 365 (6th Cir. 2004). It acknowledges, as it must, that this case involves statutory language not charged (nor even in existence) in Bowker. Undeterred by this admission, however, it claims that Bowker supports its contention that the statute charged in this case is constitutional. Nothing in Bowker (or the Supreme Court's First Amendment cases) supports such a conclusion, as both Mr. Cassidy

---

agreement and made additional requests for these communications, the Government has not provided them to counsel.

[5] The Government's citation to United States v. Lee, 935 F.2d 952 (8th Cir. 1991), a cross-burning case, is particularly curious since that case was not only overruled by subsequent Supreme Court opinions, but was reversed in pertinent part by the Eighth Circuit on rehearing. United States v. Lee, 6 F.3d 1297 (8th Cir. 1993)(en banc).

[6] The Government repeatedly strays from the language charged in the Indictment by peppering its response with allegations beyond harassment causing substantial emotional distress. Mr. Cassidy previously noted the considerable gulf between the allegations in the Complaint and the statutory language included in the Indictment. In its opposition, the Government comes perilously close to varying from the allegations in the Indictment. Of course, the Fifth Amendment places limits on the Government's ability to amend allegations contained in the Indictment. United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999).

and amicus maintained in their previous filings.[7]

The Government's reliance on United States v. Shrader, 2010 WL 2179572 (S.D.W.V. 2010) is also misplaced for several reasons.[8] First, the defendant in that case, who had murdered the victim's mother and had later continued to reach out to the victim privately, was charged with both the "intent to harass" and 'intent to intimidate" portions of the statute. United States v. Shrader, 737 F. Supp.2d 589, 591 (S.D.W.V. 2010); see also Indictment filed in Shrader, 09-00270.  He was also charged with causing substantial emotional distress and/or placing the victim or her family in fear of death or bodily injury.  Id.  Neither Bowker nor Shrader are similar to this case, either from a First Amendment perspective or from a Due Process perspective, as explained in the defense's previously filed papers in this case.

---

[7] The Government's citation to the concurring opinion in the unpublished Fifth Circuit case, United States v. Stewart, 2000 WL 122427 (5th Cir. 2000)(Dennis, J., concurring) is likewise unavailing.  Like Bowker, Stewart pre-dates the portion of the statute charged in this case.  Indeed, the court there noted that "[t]he gravamen of the charges against Stewart was that he traveled from Montgomery, Alabama to Georgetown, Texas, with the intent to injure or harass Doris Stewart, his former wife, and their three adult sons, and that he knowingly placed each of them in reasonable fear of death or serious bodily harm."  Apart from the fact that this language is not charged in this case, the concurring opinion cautions against an unduly broad reading of the term "harass."  Accordingly, the reasoning of the concurrence in Stewart is more helpful to Mr. Cassidy than the Government.

[8] Shrader is currently on appeal to the Fourth Circuit.  Of course, even if the Fourth Circuit were to find that the broader statutory language at issue there is constitutional as applied to Mr. Shrader, this would not demonstrate that the narrower statutory language at issue here is constitutional as applied to Mr. Cassidy.

The Government's reliance on United States v. Jordan, 591 F.Supp.2d 686 (S.D.N.Y. 2008), another case that pre-dates significant Supreme Court authority, is also misplaced. In Jordan, the defendant was charged with stalking by making telephone threats, speech that is not constitutionally protected. There, the government also alleged in the indictment that the defendant's stalking of the victim placed her and her family in fear of death or bodily injury. In the instant case, the Indictment contains no such allegation. Moreover, in none of these cases cited by the Government, are the victims or associates of the victims repeatedly reaching out in any way to those they claim are perpetrating the "cyberstalking." Mr. Cassidy respectfully submits that the Court should dispose of this case like the district court did in another case cited by the Government (and which involved actual interstate travel), United States v. Infante, 2010 WL 1268140 (D. Ariz. 2010) by granting his motion to dismiss the Indictment.

> B. The Government's Novel Interpretation of the First Amendment Has Not Been Adopted By Any Court.

The Government's arguments evince a misunderstanding of both the First Amendment and of how Twitter works. First, as Mr. Cassidy previously stated, this case involves speech, not conduct. Pressing keys on a keyboard is no more "conduct" than the actions of opening one's mouth to speak. There are, of course, limits on what speech – whether typed or spoken – is constitutionally protected, but, as previously stated – the Government does not allege that the speech at issue herein falls within any of the categories - threats, obscenity and incitement. Here, the

14

Government appears to be asking the Court to recognize a fourth category. The Court should decline this opportunity just as Judge DiGiralamo recently did in invalidating another statute on First Amendment grounds. United States v. Aaron Lawless, Case No. 11-173M (D. Md. Aug. 29, 2011)(holding that Stolen Valor Act was facially unconstitutional because the statute "does not fit within the historically recognized categories of speech which find no protection in the First Amendment).

The Government does not address Ms. Zeoli's and/or her followers' use of Twitter and blogs to post slanderous and defamatory comments about Mr. Cassidy. However, it seems anomalous to suggest that their numerous postings (far greater in number than even the amount alleged by Mr. Cassidy) harassing and defaming Mr. Cassidy find protection in the Constitution, but his postings in response are not.

The Government's comparison of the use of Twitter to phone harassment also fails. Twitter involves posting a message for all to see; a phone call is a pointed communication with a particular person. That Twitter postings may be about a person does not make them private, direct contact anymore than a person standing on a soapbox ranting about a person in a public could be said to be making direct contact with the individual. Moreover, even if a telephone analogy were appropriate to the actual facts in this case, it would involve the following scenario: Person One (and her followers) consistently call Person Two leaving defamatory messages about the person. Person Two calls back, leaving insulting messages and asking to be left alone. Person Two contacts law enforcement and also changes his

telephone number numerous times to try to get away from the barrage of vicious and defamatory messages. Prosecuting Person Two for telephone harassment in the above scenario seems like an odd response.

Furthermore, the cases the Government relies upon involving telephone harassment support the defense's position. In United States v. Tobin, 480 F.3d 53 (1st Cir. 2007), the First Circuit reversed the defendant's conviction, holding that any interpretation of harassment that equated it was "repeat calling done in bad faith" was overbroad. In another case curiously cited by the Government, United States v. Popa, 187 F.3d 672 (D.C. Cir. 1999), the Court of Appeals for the District of Columbia rejected as unduly expansive the very argument the Government makes now.

One of the country's leading First Amendment scholars, Eugene Volokh, a constitutional law professor at UCLA, has stated that the Government's theory in this case cannot be reconciled with the First Amendment. E. Volokh, The Volokh Conspiracy, Federal Government Prosecuting Man for Writing Many Insulting Tweets and Blog Posts About Religious Leader, Aug. 27, 2011,

http://www.volokh.com/2011/08/27/federal-government-prosecuting-man-for-writing-many-insulting-tweets-and-blog-posts-about-relgious-leader;

A Question for Federal Prosecutors About the Emotionally Distressing Tweets/Blog Post Case, Aug. 28, 2011, http://www.volokh.com/2011/08/28/a-question-for-federal-prosecutors-about-the-emotionally-distressing-tweetsblog-

posts-case.[9] Others have noted the constitutional problems present in this case. See, e.g., Citizen Media Law Project, Zen and the Constitutionality of Twitter 'Cyberstalking', Sept. 6, 2011, http://www.citmedialaw.org/blog/2011/zen-and-constitutionality-twitter-cyberstalking (discussing constitutional problems with the Government's theory in this case and comparing Massachusetts stalking statute to portion of federal cyberstalking statute invoked by the Government). Mr. Cassidy respectfully requests the Court to adopt this understanding of the applicable law and reject the Government's interpretation.

The Government's claims that Mr. Cassidy's speech about a religious figure (which, as noted above, is absent from the Indictment) is insufficiently theological to be constitutionally protected is specious. Also specious is the Government's claim that political speech does not cause substantial emotional distress.

Courts have long recognized the problem associated with use of the word "harass" in stalking statutes. See e.g., State v. Bryan, 910 P.2d 212, 217 (Kan. 1996)(invalidating stalking statute that included the terms "harass,", "alarm" and "annoy"). Statutes using this term that are "most capable of withstanding challenges of vagueness and overbreadth . . . have three main components: (1) They

---

[9] The Volokh Conspiracy is a legal blog which contains postings primarily by law professors. http://www.volokh.com. Professor Volokh's contention that this prosecution is unconstitutional are based on the facts as alleged in the Complaint. Counsel maintains that consideration of the entirety of the facts in this case (i.e. Ms. Zeoli's and KPC's persistent cyberstalking and harassing of Mr. Cassidy and others) should only lead one to a more forceful conclusion that this prosecution is unconstitutional.

require a credible threat along with the harassing conduct; (2) exempt constitutionally protected activity; and (3) define the terms in relation to an objective standard." (citing Katherine Boychuck, Are Stalking Laws Unconstitutionally Vague or Overbroad?, 88 NWYULR 769 (1994)(emphasis omitted). The portion of section 2261(A)(2)(A) contains none of these components. Accordingly, it is unconstitutional.

    C.    The Government Ignores the Legislative History of Section 2261A(2)(A).

In its opposition memorandum, the Government ignores the legislative history discussions by Mr. Cassidy and amicus. Amicus, in particular, has an extensive discussion about how the language at issue in this case came to be inserted. The Government makes no mention of this in its filing.

Rather, the Government argues that a standard greater than "mere emotional upset" in a statute criminalizing speech is enough to make it pass constitutional muster. No doubt this statement alone is enough to cause more than "mere emotional upset" to anyone familiar with the First Amendment. It also disregards the substantial emotional distress that Mr. Cassidy has suffered at the hands of Ms. Zeoli and her followers.[10] The Government's arguments in support of

---

[10] As a factual matter, it was widely known that Ms. Zeoli surrounded herself with an entourage and suffered from various ailments long before she even met Mr. Cassidy. See e.g., Martha Sherrill, The Buddha From Brooklyn: A Tale of Spiritual Seduction (2000). A minimal amount of investigation would have revealed this. As noted above, these allegations appear to have gone from the mouth of Ms. Zeoli and/or her followers at KPC to the affidavit. This is but one of the many troubling aspects of this case.

the constitutionality of the portion of § 2261A(2)(A) charged in this case are groundless.

## CONCLUSION

For the reasons stated above, and for the reasons stated in his previously-filed motions, Mr. Cassidy respectfully requests this Court to grant his motions to dismiss and his motions to suppress evidence.

`

                          Respectfully submitted,
                          JAMES WYDA
                          Federal Public Defender

                          _____/s/_____
                          EBISE BAYISA
                          Assistant Federal Public Defender
                          LAUREN E. CASE
                          Staff Attorney
                          Office of the Federal Public Defender
                          6411 Ivy Lane, Suite 710
                          Greenbelt, MD 20770
                          Telephone: (301) 344-0600
                          Facsimile:  (301) 344-0019