## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT

'11 29 A 32

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 8:11-cr-00091-RWT |
| v. | ) ) ) | Judge: Hon. Roger W. Titus |
| WILLIAM LAWRENCE CASSIDY, | ) ) |  |
| Defendant. | ) ) ) ) ) |  |

**BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION
SUPPORTING THE DEFENDANT AND URGING DISMISSAL**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

LEGISLATIVE BACKGROUND ........................................................................................3

ARGUMENT ......................................................................................................................5

I.   Criminalizing Mr. Cassidy's Speech on Twitter Violates the First Amendment........................5

   A.   The First Amendment Bars Efforts to Criminalize Speech Absent Additional Offending Conduct.......................................................................................................................6

   B.   The Content of Mr. Cassidy's Speech is Protected Under the First Amendment. ...............7

      1.   Criticism of Public Figures — Even With the Intent to Inflict Emotional Distress — Is Protected Under the First Amendment. .............................................7

      2.   "Victim 1" Is a Public Figure, and the Government's Sole Allegation That Mr. Cassidy Intentionally Inflicted Emotional Distress Through His Speech Is Insufficient as a Matter of Law to Support a Valid Claim. .....................................8

II.  Portions of the Statute Render it Impermissibly Vague on its Face and Must be Stricken.......10

   A.   Criminal Laws Must Provide Fair Notice of What Conduct is Prohibited..........................10

   B.   The Statute Is Void on Vagueness Grounds Because It Hinges Criminal Liability on the Individual Sensitivities of the Reader...............................................................................11

III. The Language of 18 U.S.C. § 2261A Should Be Interpreted Narrowly Such That Mr. Cassidy's Indictment be Dismissed....................................................................................14

   A.   The Doctrine of Constitutional Avoidance Requires That the Court Construe the Statute Narrowly to Avoid Serious Doubts About its Constitutionality. .........................................14

   B.   The Statute is Ambiguous Such That the Rule of Lenity Should Apply.............................15

CONCLUSION...................................................................................................................17

## TABLE OF AUTHORITIES

### Federal Cases

*Ashcroft v. Free Speech Coal.*,
    535 U.S. 234 (2002)..................................................................................................... 9

*Blodgett v. Holden*,
    275 U.S. 142 (1927)................................................................................................... 14

*Boos v. Barry*,
    485 U.S. 312 (1988)..................................................................................................... 7

*Bose Corp. v. Consumers Union of United States, Inc.*,
    466 U.S. 485 (1984)..................................................................................................... 1

*Buckley v. Valeo*,
    424 U.S. 1 (1976)....................................................................................................... 10

*Church of Am. Knights of Ku Klux Klan v. City of Erie*,
    99 F. Supp. 2d 583 (W.D. Pa. 2000)............................................................ 11, 12, 13

*City of Chicago v. Morales*,
    527 U.S. 41 (1999)..................................................................................................... 10

*Coates v. Cincinnati*,
    402 U.S. 611 (1971)................................................................................................... 10

*Commonwealth v. Kwiatkowski*,
    637 N.E.2d 854 (Mass. 1994) ................................................................................... 12

*Crowell v. Benson*,
    285 U.S. 22 (1932)..................................................................................................... 14

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)....................................................................................................... 8

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)..................................................................................................... 9

*Harriman v. Interstate Commerce Commission*,
    211 U. S. 407 (1908)................................................................................................. 15

*Herbert v. Lando*,
    441 U.S. 153 (1979)..................................................................................................... 7

*Hustler Magazine, Inc. v. Falwell*,
 485 U.S. 46 (1988)......................................................................................... 1, 7, 9

*Hynes v. Mayor & Council of Borough of Oradell*,
 425 U.S. 610 (1976)............................................................................................... 10

*Kolender v. Lawson*,
 461 U.S. 352 (1983)............................................................................................... 10

*Mink v. Knox*,
 613 F.3d 995 (10th Cir. 2010) ............................................................................... 8

*NAACP v. Claiborne Hardware Co.*,
 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982)........................................ 9

*New York Times Co. v. Sullivan*,
 376 U.S. 254 (1964)................................................................................................. 7

*Pallas v. State*,
 636 So. 2d 1358 (Fla. Dist. Ct. App. 1994), *aff'd*, 654 So. 2d 127 (Fla. 1995)................ 11

*PSINet, Inc. v. Chapman*,
 362 F.3d 227 (4th Cir. 2004) ............................................................................... 14

*Republican Party of Minnesota v. White*,
 536 U.S. 765 (2002)................................................................................................. 6

*Smith v. California*,
 361 U.S. 147 (1959)............................................................................................... 10

*State v. Bryan*,
 910 P.2d 212 (Kan. 1996)................................................................................... 12, 13

*State v. LaFontaine*,
 16 A.3d 1281 Conn. App. 546  (Conn. App. Ct. 2011) ........................................ 6

*State v. Moulton*,
 991 A.2d 728 (Conn. App. Ct. 2010)...................................................................... 6

*State v. Norris-Romine*,
 894 P.2d 1221 (Or. Ct. App. 1995)...................................................................... 13

*Texas v. Johnson*,
 491 U.S. 397 (1989)................................................................................................. 6

*U.S. ex rel Attorney General v. Delaware & Hudson Co.*,
    213 U.S. 366 (1909) ........................................................................................ 15

*United States v. Bass*,
    404 U.S. 336 (1971) ........................................................................................ 16

*United States v. Bowker*,
    372 F.3d 365 (6th Cir. 2004),
    *vacated on other grounds*, 543 U.S. 1182 (2005) ............................................. 4, 5, 11, 12

*United States v. Gilbert*,
    813 F.2d 1523 (9th Cir. 1987) ...................................................................... 12

*United States v. Santos*,
    553 U.S. 507 (2008) .................................................................................. 15, 16

*United States v. Williams*,
    553 U.S. 285 (2008) ........................................................................................ 10

*Virginia v. Black*,
    538 U.S. 343 (2003) ........................................................................................ 11

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ........................................................................................ 14

**Federal Statutes**

18 U.S.C. § 2261A(2)(A) .......................................................................................... *passim*

**Constitutional Provisions**

U.S. Const. Amend. I .............................................................................................. *passim*

**Legislative Materials**

151 Cong. Rec. S13760 (daily ed. Dec. 16, 2005) (statement of Sen. Joseph Biden) .................... 4

151 Cong. Rec. S13763 (daily ed. Dec. 16, 2005) .......................................................... 4

H.R. 196, 112th Cong. (1st Sess. 2011) ..................................................................... 16

Reauthorization of the Violence Against Women Act: Hearing Before the S. Comm. on the
Judiciary, 109th Cong. 370-388 (2005) *microformed on* CIS No. 2009-S521-28 (Cong. Info.
Serv.) ........................................................................................................ 4, 5

## INTRODUCTION

This is a case about the basic freedom to express one's thoughts to the public. Chief Justice Rehnquist once wrote, "[a]t the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503-504 (1984)). "'[T]he freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole.'" *Id.* at 50-51.

As the ways people express their thoughts adapt to new technology, it is important to maintain our Constitutional guarantees at the electronic frontier. While not all speech is protected by the First Amendment, the idea that courts must police every inflammatory word spoken online not only chills freedom of speech, but is unsupported by decades of First Amendment jurisprudence. With these concepts in mind, this Court should protect online freedom of expression by dismissing the indictment and invalidating the portion of 18 U.S.C. § 2261A(2)(A) criminalizing online speech directed at public figures that causes "substantial emotional distress" as inconsistent with the First Amendment.

## FACTUAL BACKGROUND

As technology advances, more and more people use the Internet and social media to communicate with each other. In 2010, seventy-nine percent of adults and ninety-three percent of teens in the United States used the Internet at the workplace, school, home, or other location, on at least an occasional basis.[1]   At least seventy-three percent of online teens and sixty-one

---

[1] *See Demographics of Internet Users*, Pew Internet & Am. Life Project, http://pewinternet.org/Static-Pages/Trend-Data/Whos-Online.aspx (last visited June 17, 2011); *Demographics of Teen Internet Users*, Pew Internet & Am. Life Project,

percent of online adults use social networking sites; fourteen percent of teens and adults post content to their own online journals or blogs; twenty-four percent of online adults use a microblogging service like Twitter to post information online.[2]

Twitter is a social networking website that allows each user to create a unique profile and publish messages onto their Twitter page, or "feed."[3]  Twitter messages published on a user's feed are called "tweets," and can be no more than 140 characters in length.  Tweets are displayed on a user's feed in reverse chronological order, with the most recent tweet appearing first.  One Twitter user can "follow" (or subscribe) to another user's feed to read that person's tweets.

One of the defining characteristics of Twitter is choice.  By default, tweets are visible to the public, meaning anyone — even someone *without* a Twitter account or a Twitter user who does not follow a particular person — can view a user's tweets.  But an individual user can also "protect" her tweets, which makes them visible only to followers she approves.[4]  Users can also send each other private tweets known as "direct messages," which, like physical letters or email, are directed to and can be viewed by only the intended recipient.[5]  However, as alleged in the complaint here, all of the tweets published by the Defendant were broadcast to the public at large and were not sent privately to the victim.  *See* DN 20-2 at 5.

Since launching in 2007, Twitter's popularity has exploded.  More than 460,000 new accounts are created on Twitter each day and account holders "tweet" an average of 140 million

---

http://pewinternet.org/Static-Pages/Trend-Data-for-Teens/Whos-Online.aspx (last visited June 17, 2011).
[2] *See Trend Data for Teens*, Pew Internet & Am. Life Project, http://pewinternet.org/Static-Pages/Trend-Data-for-Teens/Online-Activites-Total.aspx (last visited June 17, 2011).
[3] *See generally Twitter*, Wikipedia, https://secure.wikimedia.org/wikipedia/en/wiki/Twitter (last visited July 19, 2011); *see also* Complaint, Docket No. ("DN") 20-2 at p. 5.
[4] *About Public and Protected Tweets*, Twitter Help Center, https://support.twitter.com/entries/14016-about-public-and-protected-accounts (last visited July 25, 2011).
[5] *What      Is      a      Direct      Message?      (DM)*,      Twitter      Help      Center, https://support.twitter.com/entries/14606-what-is-a-direct-message-dm (last visited July 25, 2011).

2

times per day.[6]  *The New York Times* recently reported Twitter has 400 million visitors to its website every month.[7]   Numerous politicians, celebrities and athletes use Twitter to directly communicate with the public, including President Barack Obama, who has over 690,000 followers.  *See* Twitter Account of @BarackObama, https://twitter.com/#!/BarackObama (last visited July 27, 2011).

The government's novel theory in this case is that publishing a message to the public at large constitutes a crime if a public figure, in her own subjective way, feels "substantial emotional distress" when she views it.  As explained below, this interpretation of the law not only criminalizes the content of speech in violation of the First Amendment but renders portions of 18 U.S.C. § 2261A(2)(A) unconstitutionally vague.

## LEGISLATIVE BACKGROUND

Mr. Cassidy is charged with violating 18 U.S.C. § 2261A(2)(A).[8]   The government alleges that he:

> with the intent to harass and cause substantial emotional distress to a person in another state, used an interactive computer service and a facility of interstate commerce, to engage in a course of conduct that caused substantial emotional distress to that person, to wit: the posting of messages on www.twitter.com and other Internet websites concerning a person whose initials are A.Z.

---

[6] *See #numbers*, Twitter Blog (Mar. 14, 2011), http://blog.twitter.com/2011/03/numbers.html.
[7] *See* Claire Cain Miller, *Twitter Is Still Whistling*, N.Y. Times (July 19, 2011),
http://bits.blogs.nytimes.com/2011/07/19/twitter-is-still-whistling.
[8] 18 U.S.C. § 2261A(2)(A) criminalizes anyone who,

> (2) with the intent--

> (A) to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States . . .

> . . . uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person . . .

Indictment, DN 1. The two major elements of the crime for which Mr. Cassidy has been indicted — and which render § 2261A(2)(A) constitutionally problematic — are the use of an "interactive computer service" and causing another "substantial emotional distress."

According to the legislative history, the expansion of the anti-stalking section of the statute to explicitly prohibit harassment by means of an "interactive computer service" was understood to "incorporate new surveillance technology like Global Positioning System, GPS." 151 Cong. Rec. S13760 (daily ed. Dec. 16, 2005) (statement of Sen. Joseph Biden). In other words, Congress intended to prohibit harassment by use of "stalking surveillance" such as location tracking devices. *See, e.g.*, 151 Cong. Rec. S13763 (daily ed. Dec. 16, 2005); *see also* Reauthorization of the Violence Against Women Act: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 370-388 (2005), *microformed on* CIS No. 2009-S521-28 (Cong. Info. Serv.) (statement of Mary Lou Leary, Executive Director, National Center for Victims of Crime) ("Stalkers can now use global positioning systems, or GPS, to track their victims' every move, but our current federal law does not cover this type of invasive and terrifying surveillance."). The inclusion of the phrase "interactive computer service" in this statute was not intended to include online forums for speech.

Also introduced as part of the Violence Against Women Act of 2005 was the other problematic element of Mr. Cassidy's alleged crime: "caus[ing] substantial emotional distress" "with the intent" to cause such harm by means of an interactive computer service. Until the 2005 amendment, the statute held defendants criminally liable only for the "concrete" harm of causing reasonable fear of the death or serious bodily injury to a person. *See, e.g.*, *United States v. Bowker*, 372 F.3d 365, 381-82 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1182 (2005) (relying in part on this concreteness to uphold the statute against a vagueness challenge).

*Bowker* contrasted the previous version of § 2261A with a local ordinance that had been ruled unconstitutionally vague, concluding § 2261A "imposes a far more concrete harm requirement than the ordinance . . . which did not require that the harassment or intimidation result in any particular type of reaction in the audience." *Id.*

The legislative record, however, reflects little if any consideration or study of expanding the actionable harm in this manner.  In fact, the legislative history shows a conscious disregard for the idea, recognized in *Bowker*, that harm must be concrete, and not subject to a particular reaction by the victim.  *See* Reauthorization of the Violence Against Women Act: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 370-388 (2005), *microformed on* CIS No. 2009-S521-28 (Cong. Info. Serv.) (statement of Mary Lou Leary, Executive Director, National Center for Victims of Crime) ("Given the danger posed by stalkers, the criminal justice system must be able to intervene before the victim fears bodily injury or death.  VAWA 2005, therefore, adds 'substantial emotional harm' to the list of reactions a victim may have . . . .").

These additions to § 2261A, while well intentioned, ultimately takes the statute far beyond the constitutional proscriptions of speech, and must be stricken to save the statute from vagueness.

## ARGUMENT

## I.   Criminalizing Mr. Cassidy's Speech on Twitter Violates the First Amendment.

The First Amendment to the Constitution states "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I.  The federal statute at issue here, 18 U.S.C. § 2261A(2)(A), is unconstitutional as applied to Mr. Cassidy as his tweets, at worst, amount to protected criticism of a public figure.  While the government may appropriately bar

some expressive conduct, any attempted application to criminalize Mr. Cassidy's online publication here is unlawful under the First Amendment.

## A.     The First Amendment Bars Efforts to Criminalize Speech Absent Additional Offending Conduct.

Generally, a criminal statute violates the First Amendment's right to free speech if it imposes criminal liability on the basis of speech alone. "The First Amendment literally forbids the abridgment only of 'speech' . . . ." *Texas v. Johnson*, 491 U.S. 397, 404 (1989).[9] *See also Republican Party of Minn. v. White*, 536 U.S. 765, 793 (2002) (Kennedy, J., concurring) ("Here, a law is directed to speech alone where the speech in question is not obscene, not defamatory, not words tantamount to an act otherwise criminal, not an impairment of some other constitutional right, not an incitement to lawless action, and not calculated or likely to bring about imminent harm the State has the substantive power to prevent.  No further inquiry is necessary to reject the State's argument that the statute should be upheld." (internal quotations and citations omitted)).

Mr. Cassidy is being prosecuted on the basis of the content of his speech, not conduct. The indictment identifies his offending behavior as "the posting of messages on www.twitter.com and other Internet websites."  DN 1.  The criminal complaint alleges the

---

[9] For example, in *State v. LaFontaine*, 16 A.3d 1281, 128 Conn. App. 546  (Conn. App. Ct. 2011), the defendant was prosecuted under a criminal harassment statute after he angrily yelled over the telephone to his wife's attorney, saying "if they thought they deserved respect, he would 'show [them] what respect was.'"  *LaFontaine*, 128 Conn. App. at 549.  The court ruled applying the harassment statute solely on account of the content of the defendant's speech during the phone call violated his First Amendment rights. *LaFontaine*, 128 Conn. App. at 558. And in *State v. Moulton*, 991 A.2d 728 (Conn. App. Ct.), *appeal granted*, 996 A.2d 278 (2010), the Court found the defendant was unconstitutionally prosecuted for commenting during a telephone call to the post office that she "understood how a postal worker could become enraged and that she could 'do that, too,' in reference to recent killings by a postal worker in California." *Moulton*, 991 A.2d at 736.  The court noted the prosecution was impermissible because the statute "permitted the jury to find the defendant guilty of harassment on the basis of speech that was not given first amendment scrutiny, rather than on the basis of her conduct in making the call." *Id.* at 737.

"nexus" for harassment is Mr. Cassidy's "blogs and [] Twitter accounts." DN 20-2 at ¶ 8.  Given

the government's reliance on the content of those messages and the absence of any allegation of

action apart from speaking online, the government's theory must be that the content of Mr.

Cassidy's speech caused the victim "substantial emotional distress."  *See id.* at ¶¶ 11-13, 20-23

(reproducing the content of sixty-eight tweets and four blog posts).  But such a construction of

the statute is impermissible under the First Amendment.

**B.      The Content of Mr. Cassidy's Speech is Protected Under the First Amendment.**

Apart from seeking to criminalize speech absent any offending conduct, the

government's indictment of Mr. Cassidy is further deficient in that it impermissibly seeks to

impose criminal liability based on the content of that speech.

**1.      Criticism of Public Figures — Even With the Intent to Inflict Emotional Distress — Is Protected Under the First Amendment.**

"[P]ublic figures . . . may not recover for the tort of intentional infliction of emotional

distress by reason of publications . . . without showing in addition that the publication contains a

false statement of fact which was made with 'actual malice,' *i.e.*, with knowledge that the

statement was false or with reckless disregard as to whether or not it was true."  *Hustler*, 485

U.S. at 56.  As the Supreme Court has noted, "the fundamental importance of the free flow of

ideas and opinions on matters of public interest and concern" is the core of First Amendment

protections, even where speech includes "vehement, caustic, and sometimes unpleasantly sharp

attacks . . . ."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  Furthermore, the

Supreme Court has shown a "longstanding refusal to [punish speech] because the speech in

question may have an adverse emotional impact on the audience," having rejected standards

based on "dignity" and "outrageousness."  *Boos v. Barry*, 485 U.S. 312, 322 (1988) (alterations

in original) (quoting *Hustler*, 485 U.S. at 55).  Simply put, a higher burden applies before a

person is liable for inflicting emotional distress on a public figure, a standard that the

government cannot meet here.  *See, e.g., Herbert v. Lando*, 441 U.S. 153, 157 n.1 (1979) (civil

and criminal libel cases "are subject to the same constitutional limitations.") (citing *Garrison v. Louisiana*, 379 U.S. 64 (1964)); *Mink v. Knox*, 613 F.3d 995 (10th Cir. 2010) (applying First Amendment limitations to a criminal defamation case).

**2.     "Victim 1" Is a Public Figure, and the Government's Sole Allegation That Mr. Cassidy Intentionally Inflicted Emotional Distress Through His Speech Is Insufficient as a Matter of Law to Support a Valid Claim.**

Victim 1 — a woman easily identified based on the voluminous biographical information included by the prosecution in the criminal complaint and whose identity is necessary for the relevant First Amendment analysis — is unquestionably a public figure. She leads an ongoing public conversation on religion, addressing Internet users on a frequent basis from her own Verified Twitter account, which has 17,221 followers.[10] She has produced dozens of publicly accessible online video teachings which have been viewed over 143,000 times as of the filing of this brief.[11] She also makes her public teachings available to her followers through the Buddhist organization Kunzang Odsal Palyul Changchub Choling ("KPC") which she founded.[12]

The complaint filed in this case confirms this. The government explains that Victim 1 holds the special position as "the only American-born female tulku" who is enthroned as a reincarnate master within the Palyul lineage of the Nyingma tradition of Tibetan Buddhism, assertions[13] supported by the biography, teachings, and photos on her web site. *See* DN 20-2 at ¶ 7. Indeed, her web site explains that the mission of the KPC is "to inspire people to improve the world and end suffering for the benefit of all beings" while claiming that she personally "has

---

[10] *See* Verified Twitter account @JALpalyul, http://twitter.com/#!/JALpalyul (last visited July 27, 2011). Twitter uses Verified accounts on a limited basis for "well known accounts so users can trust that a legitimate source is authoring their Tweets." *About Verified Accounts*, Twitter, http://support.twitter.com/groups/31-twitter-basics/topics/111-features/articles/119135-about-verified-accounts (last visited July 17, 2011).

[11] *See KunzangPalyulCholing's Channel*, YouTube, http://www.youtube.com/user/KunzangPalyulCholing (last visited July 17, 2011).

[12] *See, e.g.*, *Teachings*, Kunzang Palyul Choling, http://www.tara.org/jetsunma-ahkon-lhamo/teachings/ (last visited July 17, 2011) (listing Victim 1's MP3 audio teachings, PDF published teachings, and "Tweachings" compiling series of tweets by Victim 1).

[13] *See Jetsunma Ahkon Lhamom*, Kunzang Palyul Choling, http://www.tara.org/jetsunma-ahkon-lhamo/ (last visited June 20, 2011).

8

been transferring the meaning of Buddhism for thousands in the English-speaking world."[14]  The

government's allegations confirm that Victim 1 has "assumed [a] role[] of especial prominence

in the affairs of society" such that she has "invite[d] attention and comment" and thus gained the

status of a public figure for First Amendment purposes. *Gertz v. Robert Welch, Inc.*, 418 U.S.

323, 354 (1974).

The government's sole allegation that "the posting of messages on www.twitter.com and

other websites" regarding public figure Victim 1 "with the intent to harass and cause substantial

emotional distress" is insufficient to state a criminal claim as it contradicts the controlling

Supreme Court precedent in *Hustler Magazine v. Falwell* and its progeny.  DN 1.  Even if Mr.

Cassidy's "utterance[s] [were] intended to inflict emotional distress," such expression is

constitutionally protected.  *Hustler*, 485 U.S. at 53.  As the Supreme Court explained:

> "Outrageousness" in the area of political and social discourse has an inherent
> subjectiveness about it which would allow a jury to impose liability on the basis
> of the jurors' tastes or views, or perhaps on the basis of their dislike of a particular
> expression.  An "outrageousness" standard thus runs afoul of our longstanding
> refusal to allow damages to be awarded because the speech in question may have
> an adverse emotional impact on the audience.  *See NAACP v. Claiborne
> Hardware Co.*, 458 U.S. 886, 910, 102 S.Ct. 3409, 3424, 73 L.Ed.2d 1215 (1982)
> ("Speech does not lose its protected character . . . simply because it may
> embarrass others or coerce them into action").

*Id.* at 55.

"[A] law imposing criminal penalties on protected speech is a stark example of speech

suppression" that violates the First Amendment.  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234,

244 (2002).  The revised statutory section under which Mr. Cassidy was charged impermissibly

suppresses such protected speech.  As such, the criminal indictment against him must be

dismissed.

---

[14] *See About Us*, Kunzang Palyul Choling, http://www.tara.org/about (last visited July 17, 2011).

**II.     Portions of the Statute Render it Impermissibly Vague on its Face and Must be Stricken.**

The government's attempt to prosecute Mr. Cassidy for "stalking" under 18 U.S.C. § 2261A(2)(A) must also fail as portions of the statute render it unconstitutionally vague. *See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) ("Uncertainty about the scope of . . . additional coverage [beyond legally permissible prohibitions] provides the basis for respondents' claim that the ordinance is too vague."). The statute does not provide sufficient notice of what constitutes criminal conduct, risking arbitrary enforcement. Accordingly, the Court should dismiss the indictment on this separate ground.

**A.     Criminal Laws Must Provide Fair Notice of What Conduct is Prohibited.**

Due process requires that a criminal statute provide adequate notice to an average person that his contemplated conduct is illegal, for "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Buckley v. Valeo*, 424 U.S. 1, 77 (1976) (internal quotation marks and citations omitted). A criminal statute is unconstitutionally vague if it either fails "to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or encourages "arbitrary and discriminatory enforcement." *Morales*, 527 U.S. at 56 (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)); *see also, e.g.*, *United States v. Williams*, 553 U.S. 285, 306 (2008) (noting that a statute is invalid for vagueness when the law ties culpability to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." (citing *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971))). This general test of statutory vagueness demands a stricter application when a law may have an "inhibiting effect on speech." *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 620 (1976) (citing *Smith v. California*, 361 U.S. 147, 151 (1959)). Such a shortcoming is plainly on display here.

**B.**     **The Statute Is Void on Vagueness Grounds Because It Hinges Criminal Liability on the Individual Sensitivities of the Reader.**

The statutory prohibition in this case — a ban on intentionally causing "substantial emotional distress" — is impermissibly vague because it ties the harm that triggers criminal culpability to the subjective, unpredictable sensibilities of individual listeners or readers. This falls far short of the few circumstances in which courts have determined that expression is unprotected by the First Amendment, such as when one person makes a true threat to another.

"Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 360 (2003). Unsurprisingly, intimidation or harassment statutes that have survived constitutional scrutiny have been limited to situations involving speech and conduct encompassing "true threats." *See, e.g.*, *Pallas v. State*, 636 So. 2d 1358, 1363 (Fla. Dist. Ct. App. 1994), *aff'd*, 654 So. 2d 127 (Fla. 1995) (noting statute explicitly exempts constitutionally protected conduct because aggravated stalking statute requires both a credible threat and intent to place the victim in reasonable fear of death or bodily injury).

In fact, *Bowker* upheld the constitutionality of the prior version of § 2261A precisely because it was limited to situations where a "true threat" was involved. Comparing § 2261A to a Michigan state statute, the Sixth Circuit noted "the federal statute arguably is less vague because it circumscribes the type of fear a victim must feel, namely a fear of death or serious bodily injury, whereas the Michigan law does not." *Bowker*, 372 U.S. at 381.

*Bowker* contrasted the prior version of § 2261A with the ordinance at issue in *Church of Am. Knights of Ku Klux Klan v. City of Erie*, 99 F. Supp. 2d 583 (W.D. Pa. 2000). There, a district court struck down a statute prohibiting the public wearing of masks with the intent to

11

"intimidate," a term left undefined in the statute. *See Ku Klux Klan*, 99 F. Supp. 2d at 592.  The

district court explained, "[b]ecause the provision does not define the terms 'intimidate,'

'threaten, 'abuse,' or 'harass,' the speaker is not given adequate notice as to what forms of

potentially legitimate speech—including symbolic speech—may run afoul of the Ordinance."

*Id.* The inclusion of a separate "intent" requirement on behalf of the speaker failed to satisfy the

vagueness test because the complete subjectivity of the "victim's" harm left the "offender," as

well as law enforcement, without guidance as to what constituted a crime:

> the speaker's liability is potentially defined by the reaction or sensibilities of the
> listener; what is "intimidating or threatening" to one person may not be to
> another.  And, although the provision has a scienter requirement, it is reasonable
> to expect that the requisite intent could be inferred from circumstantial factors,
> which may include the effect that particular speech has on the speaker's audience.

*Id.* at 592.  The prior version of § 2261A, on the other hand, "impose[d] a far more concrete

harm requirement than the ordinance at issue in *Ku Klux Klan*. . . ." *Bowker*, 372 F.3d at 382.

Striking down a speech-restricting statute premised on grounds such as "intimidation" or

"harassment" is not new.  While "the element of intent [can be] the determinative factor

separating protected expression from unprotected criminal behavior," *United States v. Gilbert*,

813 F.2d 1523, 1529 (9th Cir. 1987), the harassment and stalking statutes that have been found

vague have generally defined criminal liability based on the particular sensibilities of the victim,

rather than by providing clear and objective definitions of what conduct is prohibited. *See, e.g.*,

*Commonwealth v. Kwiatkowski*, 637 N.E.2d 854, 857 (Mass. 1994) (holding a requirement that a

defendant "repeatedly" harass another person could be interpreted to require a repetition of a

pattern over a period of time, or a single pattern or series of acts); *State v. Bryan*, 910 P.2d 212,

220 (Kan. 1996) (holding statute vague because annoying, alarming, or harassing a victim is

subject to the particular sensibilities of the victim);[15] *State v. Norris-Romine*, 894 P.2d 1221, 1224 (Or. Ct. App. 1995) (holding a requirement that a defendant act without "legitimate purpose" did not provide fair notice).

The theory of § 2261A charged here, like the ordinance struck down in *Ku Klux Klan*, bases criminal liability on "the reaction or sensibilities of the listener . . . ." *Ku Klux Klan*, 99 F.Supp.2d at 592. As revised in 2005, § 2261A permits prosecution — as in this case — with merely a charge that a speaker intended to cause "significant emotional distress" and that the victim experienced such distress.   Such an undefined harm element places speakers in an untenable position in which they can have no way to know what speech may constitute a criminal act.

The vagueness of 18 U.S.C. § 2261A(2)(A) is particularly problematic given the lack of proximity between a speaker using a broadcast service like Twitter and his online readers, since his speech is readily accessible by a global audience.  It is nearly impossible for a speaker to anticipate what distress his tweets might prompt in any specific listener or group of listeners. Nor can a Twitter user know or control who is reading his tweets or what their particular sensitivities may be.  Furthermore, 18 U.S.C. § 2261A(2)(A) gives law enforcement a great deal of leeway to target crude, aggressive, or unpopular speech, such as what a listener reports as "hateful, homophobic and misogynistic,"[16] that falls short of being a true threat or otherwise unprotected by the First Amendment.  Because of these concerns, the portion of § 2261A that

---

[15] In dicta in *Bryan*, the court approved a hypothetical statute that criminalized harassment that caused "a *reasonable* person to suffer substantial emotional distress." *Bryan*, 910 P.2d at 220. But the language of § 2261A(2) establishes a subjective, rather than objective, standard for accountable harm.

[16] Kunzang Palyul Choling used these words (after Mr. Cassidy's indictment) to describe the tweets and blog posts at issue here. *See Public Statement Regarding United States v. William Cassidy 8:11-cr-000091*, Kunzang Palyul Choling, http://www.tara.org/about/press/public-statement/ (last visited July 17, 2011) ("In recent years, Jetsunma and KPC have been threatened repeatedly and made the target of hateful, homophobic and misogynistic epithets.").

imposes liability for intentionally inflicting "substantial emotional distress" must be struck down as unconstitutionally vague.

## III. The Language of 18 U.S.C. § 2261A Should Be Interpreted Narrowly Such That Mr. Cassidy's Indictment be Dismissed.

Two statutory construction principles — the doctrine of constitutional avoidance and the rule of lenity — further suggest that the language of the 18 U.S.C. § 2261A be narrowly construed in favor of Mr. Cassidy so that the scope of prohibited conduct does not encompass protected speech. Because the prohibition on intending to cause and causing "substantial emotional distress" by means of an "interactive computer service" is at best unclear and open to multiple interpretations by speakers, victims, law enforcement, and judges alike, the Court should narrowly construe the statute according to the principles discussed below. Both narrowing principles lead to the same conclusion: the indictment against Mr. Cassidy must be dismissed.

### A. The Doctrine of Constitutional Avoidance Requires That the Court Construe the Statute Narrowly to Avoid Serious Doubts About its Constitutionality.

"'[I]t is a cardinal principle' of statutory interpretation . . . that when an Act of Congress raises 'a serious doubt' as to its constitutionality, 'this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (internal alterations in original) (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). "[A]s between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act." *Blodgett v. Holden*, 275 U.S. 142, 148 (1927). "[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *PSINet, Inc. v. Chapman*, 362 F.3d 227, 236 (4th Cir. 2004) (internal quotation marks and citations omitted). The doctrine of constitutional avoidance does not require the Court to find that a possible construction of the

14

statute actually *violates* the Constitution, only that it — as here — raises serious concerns about its constitutionality. *See, e.g., U.S. ex rel Attorney General v. Del. & Hudson Co.*, 213 U.S. 366, 407-08 (1909) ("[T]he rule plainly must mean that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.") (*citing Harriman v. Interstate Commerce Commission*, 211 U.S. 407, 422 (1908)).

Interpreting the vague language of 18 U.S.C. § 2261A(2) to (a) criminalize only unprotected categories of speech such as true threats, incitement, or obscenity in addition to non-speech conduct, and (b) require an objective standard by which to evaluate a purported victim's emotional distress, is the only way to avoid raising such serious First Amendment concerns here. At the very least, the emotional distress for which the government seeks to hold a Defendant accountable should be tied to particularized fear and measured by an objective, rather than subjective standard. The government seeks to apply an alternative construction that would allow criminal prosecution of a Defendant based on the content of speech so long as the speech is enabled by technology and causes subjective distress in an audience member to allow the government to infer the requisite intent; a narrower application, on the other hand, accommodates the significant constitutional problems raised by the vagueness of the statute.

## B.    The Statute is Ambiguous Such That the Rule of Lenity Should Apply.

Lastly, this Court should apply the rule of lenity and interpret the statute narrowly. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 513 (2008). The crucial factor in determining whether the rule of lenity applies is ambiguity. "[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation

of the community, legislatures and not courts should define criminal activity.  This policy embodies the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should." *United States v. Bass*, 404 U.S. 336, 348 (1971) (internal quotation marks and citations omitted); *see also Santos*, 553 U.S. at 514 (rule of lenity based on "the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain").

The rule of lenity applies here because § 2261A(2) is impermissibly ambiguous.[17]  As previously explained, by imposing criminal liability on those who inflict "substantial emotional distress," § 2261A ties criminal culpability to the subjective, unpredictable individual sensibilities of individual listeners.  Given the way Twitter works — providing a platform for a speaker to broadcast a message to a global audience — a speaker has no control over who listens or any ability to take their individual sensitivities into account.  This means a speaker has no way of knowing what specific speech is outlawed or whether something he has posted will cause "substantial emotional distress" to a reader.

In applying the rule of lenity, the Court should interpret the statute in a manner favorable to the Defendant.  This could include reading "interactive computer service" narrowly to apply only to surveillance technology methods under § 2261A(2).  It might also include reading "substantial emotional distress" to require more than just the subjective impressions of a message's recipient.  Ultimately, the terms of § 2261A(2) if not impermissibly vague under the

---

[17] Indeed, currently pending in the House of Representatives is H.R. 196, "Simplifying The Ambiguous Law, Keeping Everyone Reliably Safe Act of 2011" which proposes the two changes that aim to eliminate § 2261A's ambiguity and restore its constitutionality. *See* H.R. 196, 112th Cong. (1st Sess. 2011).  First, it eliminates the unclear term "interactive computer service." *Id.* Second, it makes "substantial emotional distress" an objective determination, imposing criminal liability only when conduct is "reasonably expected to cause the other person serious emotional distress." *Id.*

Constitution, are such that they require application of the rule of lenity to read the ambiguous language in favor of the Defendant.

## **CONCLUSION**

Because 18 U.S.C. § 2261A(2)(A) covers constitutionally protected speech and imposes criminal liability based on the individual, subjective sensibilities of the listener, it cannot stand as currently written. The changes in communication brought by advances in technology do not erode our fundamental rights of free speech. Because the indictment of Mr. Cassidy is based upon a theory of criminal liability in an overbroad and vague statute that covers protected speech, the indictment must be dismissed.

Dated: July 29, 2011.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: _____

Charles D. Tobin (#15919)
Drew E. Shenkman (#28886)
2099 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Phone: (202) 955-3000
Fax: (202) 955-5564
Charles.tobin@hklaw.com
Drew.shenkman@hklaw.com

*Attorneys for Amicus Curiae
the Electronic Frontier Foundation*

*Of Counsel:*

ELECTRONIC FRONTIER FOUNDATION
Matthew Zimmerman, Esq.
mattz@eff.org
Marcia Hofmann, Esq.
Marcia@eff.org
Hanni Fakhoury, Esq.
hanni@eff.org
454 Shotwell Street
San Francisco, CA 94110
T: (415) 436-9333
F: (415) 436-9993
www.eff.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2011, a copy of the foregoing was sent by First Class Mail, Postage Prepaid to:

Ebise Bayisa, Esq.
Lauren Case, Esq.
Office of the Federal Public Defender
6411 Ivy Lane Ste 710
Greenbelt, MD 20770

Bryan E. Foreman, Esq.
David I. Salem, Esq.
Office of the US Attorney
6500 Cherrywood Ln Ste 400
Greenbelt, MD 20770-1249